[Cite as *Pursley v. Estate of Messman*, 2020-Ohio-2985.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## PAULDING COUNTY

BILLY E. PURSLEY, JR., ET AL.,

    PLAINTIFFS-APPELLEES,               CASE NO. 11-18-09

    v.

ESTATE OF ASHLEY ANN
MESSMANN, ET AL.,

    DEFENDANTS-APPELLEES,
    -and-                              O P I N I O N

RUSSELL D. WILLIAMS,

    DEFENDANT-APPELLANT.

---

**Appeal from Paulding County Common Pleas Court**
**Trial Court No. CI-15-010**

**Judgment Affirmed**

**Date of Decision:  May 18, 2020**

---

APPEARANCES:

    *Jason N. Flower and Tabitha L. Stewart* **for Appellant**

    *Nathan P. Woodward* **for Appellee Progressive Southeastern Ins. Co.**

    *Daniel R. Haude* **for Appellees Second Farms and Dale Janssens**

**WILLAMOWSKI, J.**

{**¶1**} Appellant Russell D. Williams ("Williams") appeals the judgment of the Paulding County Court of Common Pleas, granting summary judgment against Williams. For the reasons set forth below, the judgment of the trial court is affirmed.

*Facts and Procedural History*

{**¶2**} On February 5, 2013, Dale Janssens ("Janssens") was driving a tanker truck ("Secord Tanker") for Secord Farms, LLC, ("Secord Farms") eastbound on U.S. Highway 24 through "dense fog." Janssens Deposition, 61, 70. This stretch of U.S. Highway 24 has two eastbound lanes and two westbound lanes that are divided by a median. *Id.* at 62. Ashley Messman ("Messman") was driving northbound on County Road 87. Gray Deposition, 40. At 7:53 A.M., Messman drove into the intersection of County Road 87 and U.S. Highway 24, pulling in front of the Secord Tanker. Janssens Deposition, 73, 88, 130. The Secord Tanker broadsided Messman's vehicle, came to a stop, and obstructed the left eastbound lane of U.S. Highway 24. Doc. 68, Ex. B, C. Moments later, Billy Pursley ("Pursley"), who was driving a semi-truck for Marten Transport ("Marten Transport Vehicle") eastbound on U.S. Highway 24, crashed into the Secord Tanker. Janssens Deposition, 103, 148. Cusick Deposition, 22, 32. The Marten Transport Vehicle jackknifed, slid off of the roadway, and came to rest in the median. Doc. 68, Ex. C.

{**¶3**} After the Secord Tanker and Messman's vehicle had come to a rest, Gary Schleinkofer ("Schleinkofer"), who was driving a Nissan Altima eastbound

on U.S. Highway 24, saw the tanker truck obstructing the left lane of the road and began braking. Doc. 68, Ex. D. Doc. 68, Ex. B., Black Statement. Schleinkofer then began steering his vehicle left towards the median to avoid the Secord Tanker. Doc. 68, Ex. D. At this point, Schleinkofer's vehicle was then hit from behind by a GMC Sierra Pickup Truck ("Pickup") that was driven by Williams. Doc. 68, Ex. D. Upon impact, the Pickup pushed Schleinkofer's vehicle into the Secord Tanker and then into the median. Doc. 68, Ex. D. Gray Deposition, 52. Williams's Pickup, which was pulling a Bobcat on a trailer, then struck the Secord Tanker. Doc. 68, Ex. D, E.

{¶4} By the time the police arrived on the scene, a total of eight collisions had occurred. Doc. 128, Ex. F. The first collision was between the Secord Tanker and Messman. Doc. 128, Ex. G. The second collision was between the Marten Transport Vehicle and the Secord Tanker. Doc. 68, Ex. C. The third collision was between Williams's Pickup, Schleinkofer's vehicle, and the Secord Tanker. Doc. 128, Ex. F. The remaining five collisions that the police investigated are not relevant to this appeal.

{¶5} The police conducted an investigation into the causes of the collisions that morning. Sergeant Jonathan Gray ("Sergeant Gray") stated in his deposition that the investigation concluded that Williams was going too fast; that Williams did not maintain an assured clear distance ahead ("ACDA") of his vehicle; and that Williams was at fault for his collision with Schleinkofer's vehicle. Gray Deposition,

48-49. Ohio State Trooper Chad Spallinger ("Trooper Spallinger") similarly stated that their investigation concluded that Williams failed to maintain an ACDA. Spallinger Deposition, 82-84. Trooper Spallinger also stated that their investigation did not find any evidence that indicates that Schleinkofer's actions caused any of the collisions. *Id.* at 68-70.

{¶6} On January 26, 2015, Pursley and his wife, Barb Pursley, filed a complaint, seeking damages. Doc. 1. Among other parties, this complaint named Janssens; Secord Farms; and Williams as defendants. Doc. 1. At the time of the collision, Williams was driving a company vehicle. Doc. 6. On February 4, 2015, Williams filed a pleading that contained a counterclaim against the Pursleys, alleging that he was injured due to the negligence of Pursley. Doc. 6. He also made crossclaims against Messman, Schleinkofer, and Janssens, alleging that these individuals operated their vehicles in a negligent manner that led to his injuries. Doc. 6. Williams also requested the joinder of the insurer of his company vehicle: Progressive Southeastern Insurance Company ("Progressive"). Doc. 6, 128. He also claimed that he might be entitled to underinsured benefits. Doc. 6. Progressive filed their third-party answer on March 9, 2015, and alleged that Williams had not established the conditions precedent to obtaining underinsured benefits. Doc. 44.

{¶7} On September 1, 2016, Progressive filed a motion for summary judgment. Doc. 128. In this motion, Progressive argued that Williams had not shown that another party was responsible for the accident that caused his injuries.

Doc. 128. Progressive then argued that Williams's collision with Schleinkofer's vehicle and the Secord Tanker was a separate accident from the collision between Messman and the Secord Tanker and from the collision between the Secord Tanker and Pursley's Martin Transport Vehicle. Doc. 128. Thus, according to Progressive's argument, the cause of Williams's collision was not these earlier accidents but Williams's failure to maintain an ACDA of his vehicle. Doc. 128. On these grounds, Progressive argued that he was not legally entitled to underinsured motorist coverage under the terms of the insurance policy. Doc. 128.

{¶8} On September 14, 2016, Janssens and Secord Farms filed a motion for summary judgment that also argued that Williams failed to maintain an ACDA of his vehicle. Doc. 136. Williams filed his response to the motions for summary judgment on October 11, 2016. Doc. 139. On January 10, 2017, the trial court granted the motions for summary judgment filed by Progressive, Secord Farms, and Janssens as to Williams's cross claim. Doc. 148. The appellant filed his notice of appeal on July 13, 2018.[1] Doc. 165. On appeal, Williams raises the following three assignments of error:

**First Assignment of Error**

**The Trial Court erred in granting the Defendant Janssen's Motion for Summary Judgment based on the finding that**

---

[1] Williams initially filed his notice of appeal on February 9, 2017. Doc. 152. However, this Court dismissed Williams's appeal for lack of a Civ.R. 54(B) certification. Noticing that other claims in this case were unresolved, the trial court reissued its summary judgment order with a Civ.R. 54(B) certification on June 14, 2018. Doc. 162. Williams then filed his notice of appeal on July 13, 2018, commencing the instant appeal. Doc. 165. Thus, this matter is properly before this Court.

**Appellant Williams violated ORC 4511.21(A), and the accident scene was not reasonably discernible from Appellant's vehicle prior to the accident.**

**Second Assignment of Error**

**Appellant is entitled to an analysis of Comparative Fault regardless of whether he violated the Assured Clear Distance Ahead statute, and the trial court erred in finding that summary judgment was appropriate.**

**Third Assignment of Error**

**Appellee Progressive Southeastern Insurance Company owes a duty to provide underinsured/uninsured coverage to Appellant for his injuries, and the trial court erred in finding that Progressive was not required to provide coverage.**

*First Assignment of Error*

{¶9} Williams argues that the trial court erred by finding that he violated R.C. 4511.21(A) and by granting summary judgment on the basis of this finding.

Legal Standard

{¶10} Under the Ohio Rule of Civil Procedure 56(C), a trial court may grant a motion for summary judgment when

**(1) [n]o genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the party against whom the motion for summary judgment is made, that conclusion is adverse to that party.**

*M.H. v. Cuyahoga Falls*, 134 Ohio St.3d 65, 68, 2012-Ohio-5336, 979 N.E.2d 1261, quoting *Temple v. Wean United, Inc.*, 50 Ohio St.2d 317, 327, 364 N.E.2d 267 (1977), citing Civ.R. 56(C).

> **"The party moving for summary judgment has the initial burden 'to inform the trial court of the basis for the motion, identifying the portions of the record, including the pleadings and discovery, which demonstrate the absence of a genuine issue of material fact.'"** *Middleton v. Holbrook*, **3d Dist. Marion No. 9-15-47, 2016-Ohio-3387, 2016 WL 3223956, ¶ 8, quoting** *Reinbolt v. Gloor*, **146 Ohio App.3d 661, 664, 767 N.E.2d 1197 (3d Dist.2001).**

*Williams v. ALPLA, Inc.*, 2017-Ohio-4217, 92 N.E.3d 256 (3d Dist.).

> **'The burden then shifts to the party opposing the summary judgment.' "In order to defeat summary judgment, the nonmoving party may not rely on mere denials but 'must set forth specific facts showing that there is a genuine issue for trial.'"**

(Citations omitted.) *Bates Recycling, Inc. v. Conaway*, 2018-Ohio-5056, 126 N.E.3d 341, ¶ 10-11 (3d Dist.), quoting *Byrd v. Smith*, 110 Ohio St.3d 24, 2006-Ohio-3455, 850 N.E.2d 47, ¶ 10, quoting Civ.R. 56(E).

{¶11} Appellate courts consider a summary judgment order under a de novo standard of review. *James B. Nutter & Co. v. Estate of Neifer*, 3d Dist. Hancock No. 5-16-20, 2016-Ohio-7641, ¶ 5. "[B]ecause summary judgment is a procedural device to terminate litigation, it must be awarded with caution." *Murphy v. Reynoldsburg*, 65 Ohio St.3d 356, 358-359, 604 N.E.2d 138 (1992). For this reason, on appeal, "[t]he nonmoving party * * * receives the benefit of all favorable inferences when evidence is reviewed for the existence of genuine issues of material

facts." *Ditech Financial, LLC v. Akers*, 3d Dist. Union No. 14-18-02, 2018-Ohio-2874, ¶ 7, quoting *Byrd* at ¶ 10.

{¶12} The initial question in this appeal is whether appellant failed to maintain an ACDA of his vehicle in violation of R.C. 4511.21(A), which reads, in its relevant part, as follows: "no person shall drive any motor vehicle, trackless trolley, or streetcar in and upon any street or highway at a greater speed than will permit the person to bring it to a stop within the assured clear distance ahead." R.C. 4511.21(A). "The Supreme Court of Ohio has repeatedly held that a violation of this statute, absent a legal excuse, constitutes negligence *per se*." (Emphasis sic.) *Schoonover v. Cox*, 3d Dist. Allen No. 1-93-30, 1993 WL 430136, *3 (Oct. 14, 1993), citing *Lewis v. Certified Oil Co.*, 67 Ohio St.2d 277, 423 N.E.2d 464 (1981); *Woods v. Brown's Bakery*, 171 Ohio St. 383, 171 N.E.2d 496 (1960).

{¶13} "The assured-clear-distance-ahead rule mandates that '* * * a driver is prohibited from operating any motor vehicle * * * at a rate of speed greater than will permit him to bring it to a stop within the distance at which he can see a discernible object obstructing his path.'" *Sabo v. Helsel*, 4 Ohio St.3d 70, 71, 446 N.E.2d 457 (1983), quoting *Gumley v. Cowman*, 129 Ohio St. 36, 193 N.E. 627 (1934), paragraph two of the syllabus.

> **The 'assured clear distance ahead,' referred to in [R.C. 4511.21(A)] constantly changes as the motorist proceeds and is measured at any moment by the distance between the motorist's car and the limit of his vision ahead, or by the distance between the motorist's car and any intermediate discernible static or**

> **forward moving object in the street or highway ahead constituting an obstruction in the motorist's path or lane of travel.**

*Erdman v. Mestrovich*, 155 Ohio St. 85, 97 N.E.2d 674, paragraph one of the syllabus. *See also Cerny v. Domer*, 13 Ohio St.2d 117, 235 N.E.2d 132 (1968), paragraph two of the syllabus.

{¶14} In *Pond v. Leslein*, the Supreme Court articulated a four-prong test to determine whether a driver has violated R.C. 4511.21(A):

> **a person violates the assured clear distance ahead statute if 'there is evidence that the driver collided with an object which (1) was ahead of him in his path of travel, (2) was stationary or moving in the same direction as the driver, (3) did not suddenly appear in the driver's path, and (4) was reasonably discernible.' Thus, a driver violates the statute as a matter of law if the party invoking the statute presents uncontroverted evidence establishing all of the elements necessary to constitute a statutory violation.**

(Citations omitted.) *Pond v. Leslein*, 72 Ohio St.3d 50, 52, 647 N.E.2d 477 (1995), quoting *Blair v. Goff-Kirby Co.*, 49 Ohio St.2d 5, 7, 358 N.E.2d 634 (1976). "Where there is conflicting evidence and reasonable minds could differ concerning any one of the elements necessary to constitute a violation of the statute, a jury question exists with regard to that element." *Id*.

{¶15} In determining whether an object is reasonably discernible, the Ohio Supreme Court has provided the following definition:

> **"The word 'discernible' ordinarily implies something more than 'visible'. 'Visible' means perceivable by the eye whereas 'discernible' means mentally perceptible or distinguishable, capable of being 'discerned' by the understanding and not merely by the senses.'"**

*McFadden v. Elmer C. Breuer Transp. Co*., 156 Ohio St. 430, 441-442, 103 N.E.2d

385, 391 (1952), quoting *Colonial Trust Co., Admr. v. Elmer C. Breuer, Inc*., 363

Pa. 101, 69 A.2d 126 (1949).

> **In most instances the question whether the object with which the collision occurs is reasonably discernible gives little difficulty. A train on a highway crossing or *a truck or an automobile on the highway in the driver's path can be considered reasonably discernible without more evidence than the fact of its presence*.**

(Emphasis sic.) *Smiddy v. Wedding Party, Inc*., 30 Ohio St.3d 35, 39, 506 N.E.2d

212, 217 (1987), quoting *McFadden* at 435. "If, however, the nature of the object

be such that reasonable minds might differ as to it being reasonably discernible,

evidence to establish that it was such is required." *Id*. at 435. The Supreme Court

of Ohio has held that "an automobile, van, or truck stopped on a highway in a

driver's path during daylight hours is, in the absence of extraordinary weather

conditions, a reasonably discernible object as a matter of law."[2] *Smiddy* at 40.

---

[2] The *Smiddy* rule applies to objects that appear in the line of travel of a driver in daylight. *Smiddy, supra*, at 40. In this case, the accident occurred at 7:53 A.M. Janssens Deposition, 61, 70. Williams testified that "it was daylight," though "it was cloudy." Williams Deposition, 93. He also affirmed that "[i]t was light and [he] could see" and that the light conditions were not affecting his "vision in any way." *Id*. Pursley testified that the accident occurred during the period of the morning best described as "dawn." Pursley Deposition, 177. He affirmed that, by this statement, he meant "there [was] some light out, it[ was] not black like it is at night." *Id*. at 177-178. Further, in the accident report, the "light conditions" are listed as "daylight." Doc. 68, Ex. A. This testimony does not indicate that it was nighttime. In *Murray v. ROC Lakeside, Inc*., the Eighth District applied the rule in *Smiddy* to an accident that occurred at dusk in the process of determining whether the driver violated R.C. 4511.21(A). *Murray v. ROC Lakeside, Inc*., 8th Dist. Cuyahoga No. 75091, 1999 WL 125962, *5-6 (Feb. 18, 1999). Dawn and dusk are similar in that both periods offer drivers more limited visibility due to reduced levels of sunlight. In both of these periods, there is some light outside, though this light is not as bright as during other parts of the day.

{¶16} "Cases involving the assured-clear-distance-ahead statute require evaluation of the conduct of the driver in light of the facts surrounding the collision." *Sauer v. Crews*, 10th Dist. Franklin No. 10AP-834, 2011-Ohio-3310, ¶ 17, citing *Purcell v. Norris*, 10th Dist. Franklin No. 04AP-1281, 2006-Ohio-1473, ¶ 16. In this determination,

> **'[n]either bends nor twists in the highway, crests in the road, dim lights, fog, sleet, rain, or blinding lights of approaching motor vehicles will excuse * * * [a driver] from the duty to drive so that he can stop his vehicle within that assured clear distance ahead.'** *Roszman v. Sammet* **(1969), 20 Ohio App.2d 255, 258, 254 N.E.2d 51 [(3d Dist.)],** *reversed on other grounds* **(1971), 26 Ohio St.2d 94, 269 N.E.2d 420. Instead, the driver of an automobile has a duty to 'stop his machine whenever he is so blinded as to be unable to see the way in front of him.'** *Parnell v. Bell* **(1962), 117 Ohio App. 125, 129-30, 191 N.E.2d 220 [(1st Dist.)].**

*Purcell* at ¶ 19. *See Pleimann v. Coots*, 2d Dist. Greene No. 2002-CA-54, 2003-Ohio-316, ¶ 17.

### Legal Analysis

{¶17} On appeal, Williams advances several arguments that the Secord Tanker in front of him was not reasonably discernible. In determining if there is a question of fact as to whether the disabled Secord Tanker on the roadway was reasonably discernible, we will first consider Williams's testimony regarding what he could discern as he entered into and emerged from the fog on the morning of the accident. We will then examine the arguments that Williams raises on appeal.

{¶18} In his deposition, Williams described the fog on the roadway on the morning of the accident as "patchy." Williams Deposition, 36. He stated that the fog was getting "patchier and thicker" as he drove eastbound. *Id*. at 36. According to his testimony, there was a dense "patch of fog" located on the roadway in between him and the scene of the accidents. *Id*. at 72. In the deposition, this fog bank was referred to as a fog bank. *Id*. at 72.

{¶19} Williams testified about what he remembered perceiving as he approached, entered, and emerged from the fog bank, saying:

> **Somebody comes out and waves their hands like this to stop or slow down, I applied the brake, I looked up, there was like no visibility for like a split second, and the fog disappears, and all I see is a big chaos in front of me. A *tanker truck* jackknifed in the highway, I applied the brake all the way and tried to stop. I was looking for a way out, the median was the first choice, I couldn't go that way because there's vehicles or something I seen over there, so I tried to go right of the semi truck.**

(Emphasis added.) Williams Deposition, 40. He affirmed that, at the time he was driving towards the fog bank, he "couldn't see what's behind [the waving pedestrian], couldn't see any other vehicles behind him." *Id*. at 74. Williams also stated the following:

> **I remember someone coming out and waving their hands from the side of the road, slow down. I applied the brakes instantaneously, didn't slam on them, but I applied the brake, went through part of the fog. You couldn't see in front of you, and it was only for a split second that it lasted. Seeing total chaos in front of you * * * and that's when I put the brake down to stop. [I] [l]ooked for a way out because I felt like I was going to collide with the tanker truck, and knew that I couldn't go into the median for whatever**

-12-

**reason it was. And then turned to my right to try to get over to the other lane before impact, and I hit the tanker truck.**

*Id*. at 48-49. He explained that the "chaos" that he saw as he emerged from the fog was the "other vehicles." *Id*. at 126.

{¶20} Williams also affirmed that, once he emerged from the fog bank, he did not "instantaneous[ly]" collide with the Secord Tanker. *Id*. at 74. He stated the following:

**I looked to the left to try to go into the median, for some reason no way to go that way. I don't know why at the time, I can't remember. So at this point I tried to veer to the right to try to not hit the tanker truck, and all I remember after that is slamming into it.**

*Id*. He further affirmed that he "perceieve[d] the tanker truck in front of [him] * * *" and said that he "freak[ed] out for seeing that in front of [him]." *Id*. at 75. He then explained:

**I panicked seeing that in front of me. I looked to the left and for some reason I couldn't go to the left, so I tried to go to the right lane, and I ended up hitting the tanker truck before that could happen.**

*Id*. at 75-76.

{¶21} This testimony indicates (1) that Williams could not see the Secord Tanker ahead of him at the time that he was driving into the fog bank; (2) that Williams interpreted the waving pedestrian at the side of the road as a warning to stop or slow down; (3) that Williams saw the scene of the accidents and the Secord Tanker ahead of him in his direct line of travel when he emerged from the fog bank;

and (4) that Williams applied his brakes, looked for a way to avoid a collision, and took evasive action in response to seeing the Secord Tanker ahead of him. Williams Deposition, 40, 48-49, 74-75. These facts are based on Williams's testimony and are not in dispute.

{¶22} We will consider the significance of these facts by applying the analytical framework set forth in The Ohio Jury Instructions for the ACDA rule in R.C. 4511.21(A). These instructions are a succinct summation of an extensive body of caselaw applying R.C. 4511.21(A) and read, in their relevant part, as follows:

> **4. ASSURED CLEAR DISTANCE AHEAD. 'Assured clear distance ahead' means the distance between the vehicle the defendant is operating and a reasonably discernible object in his/her path of travel. This distance constantly changes and is measured at any moment considering the (limit of his/her vision) (range of his/her headlights).**
>
> **5. DISCERNABLE OBJECT. 'A discernible object' is a reasonably visible object. An object is discernible when it is visible or can be detected or perceived.**
>
> **6. OBSTRUCTION OF VIEW (ADDITIONAL). Where there is (a curve) (a hill) *(fog)* (rain) (specify other obstruction of view or vision) that is (in) (on) the highway, the assured clear distance is that distance between the defendant and the point where his/her vision ends or is cut off. In that event, the defendant must drive at such a speed that he/she can stop within the distance between him/her and the point where his/her vision ends.**

(Emphasis added.) Ohio Jury Instructions, CV Section 411.19 (Rev. Dec. 6, 2014).

{¶23} Williams's testimony indicates that he was aware of the nature and existence of the fog on the roadway on the morning of the accident. Williams

Deposition, 35-36. He stated that he had encountered patches of fog on the morning of the accident as he was driving and that he had noticed that the fog was getting "patchier and thicker" as he travelled. *Id*. at 35-36. Even though he had observed that the fog was getting thicker as he drove, Williams still drove into a fog bank without being able to see what was beyond the fog bank. *Id*. at 35-36, 74. *See State v. Klein*, 11th Dist. Portage No. 95-P-0053, 1998 WL 156868, *5 (March 17, 1988).

{¶24} Williams's testimony indicates that the fog ahead of him did obstruct his view of the roadway ahead of him such that he could not see the Secord Tanker before he drove into the fog bank. Williams Deposition, 74. The presence of this fog bank does not excuse him from failing to maintain an ACDA of his vehicle. *Roszman, supra*, at 258. As he approached the fog bank, Williams had to travel at a pace that gave him the ability to stop by the point where the fog ended his view of the roadway because this is the point at which his ACDA ended. *See* R.C. 4511.21(A); *Schroff v. Foley Const. Co.*, 87 Ohio App. 277, 286, 94 N.E.2d 641, 646 (1st Dist. 1950).

{¶25} Williams testified that he had "no visibility" and "couldn't see in front of [him] * * *" for a "split second" because of the fog bank. Williams Deposition, 40, 48-49. If he had maintained an ACDA of his vehicle at the time when the fog in front of him was limiting his visibility of the roadway, he would have had an ACDA ahead of his vehicle when he emerged from the fog bank and his visibility increased. However, Williams did not have an ACDA of his vehicle when he

emerged from the fog bank because he was not able to stop before he struck the Secord Tanker. Thus, his failure to guarantee himself an ACDA in which he could stop resulted in a collision with the Secord Tanker.

{¶26} Further, Williams testified that he saw a pedestrian standing at the side of the road waving their hands before he drove into the fog bank. Williams Deposition, 40, 48-49. Williams affirmed that this waving pedestrian was "the first warning that [he] had that there was a problem up ahead * * *[.]" *Id.* at 71. When asked whether he believed that this pedestrian was "trying to cause [him] to slow down," Williams responded, "Yes, to either slow down or stop." *Id.* at 73. In response to seeing this pedestrian, Williams applied his brakes but did not "slam on them" and then continued to drive into the fog bank. *Id.* at 46.

{¶27} Williams's testimony indicates that he clearly discerned the presence of this pedestrian at the side of the road and interpreted this person's gestures as a signal for him "to stop or slow down" his vehicle. *Id.* at 48. His statements indicate that he had an advance warning that there was a hazard on the roadway ahead of him before he entered the fog bank and before he saw the Secord Tanker. *See Cleveland Elec. Illum. Co. v. Major Waste Disposal*, 2016-Ohio-7442, 74 N.E.3d 689, ¶ 26 (11th Dist.) (considering the absence of a warning in an ACDA case). *See also Shooter v. Perella*, 6th Dist. Lucas No. L-07-1066, 2007-Ohio-6122, ¶ 22. However, even with this advance warning, Williams was still driving too fast to stop his vehicle before he struck the Secord Tanker. Williams Deposition, 48-49.

-16-

{¶28} Williams's testimony also indicates that the Secord Tanker was not in the fog bank but was situated beyond the fog bank. Williams Deposition, 40. Once the fog "disappeared" and he emerged from the fog bank, Williams was able to see the Secord Tanker ahead of him in his direct line of travel before he struck it. *Id*. at 40, 49, 75. His testimony indicates that he was able to recognize the object ahead of him as a truck. *Id*. at 40, 48-49. He further confirmed that the "chaos" he described seeing once he emerged from the fog bank was the "other vehicles" in the roadway. *Id*. at 126.

{¶29} Williams was not only able to see the Secord Tanker but was able to respond to its presence. Williams Deposition, 40, 48-49. He testified that, after he saw the Secord Tanker, he applied his "brake down to stop"; "tried to stop"; "[l]ooked for a way out"; determined he could not turn to the left; and took evasive action by trying to steer his vehicle to the right of the Secord Tanker. Williams Deposition, 40, 48-49, 74-75. He would not have responded in this manner if he had not been able to discern the presence of the Secord Tanker directly ahead of him in his line of travel. *See Shinaver v. Szymanski*, 14 Ohio St.3d 51, 54, 471 N.E.2d 477, 481 (1984) (holding that a "tractor-trailer * * * was 'reasonably discernible' * * * since [the driver] testified that he actually saw it before he applied his brakes.").

{¶30} The facts that Williams saw the Secord Tanker and that Williams responded to its presence establish that he was able to discern the Secord Tanker ahead of him in his direct line of travel. Thus, Williams's own testimony establishes

that the Secord Tanker was a reasonably discernible object ahead of him in his direct line of travel. *Grout v. Joseph*, 2d Dist. Clark 2000 WL 1513930, *4 (Oct. 13, 2000) (holding that the object struck was reasonably discernible because the driver saw and recognized before colliding with it). *See also Patrick v. Ward*, 18 Ohio App.2d 270, 274, 248 N.E.2d 637, 640 (3d Dist. 1969). The fact that Williams's testimony indicates that he did not see the Secord Tanker before he drove into the fog bank does not change this analysis because Williams had to drive at a speed that enabled him to stop by the point at which his vision ended in order to maintain an ACDA and because the waving pedestrian gave Williams an advance warning of the hazards on the roadway ahead of him. Williams Deposition, 40, 48-49, 74.

{¶31} In this case, the jury does not need to consider whether the Secord Tanker was a reasonably discernible object that Williams could or should have discerned ahead of him in his direct line of travel because he did discern the Secord Tanker.[3] *See Micelli v. Hirsch*, 83 N.E.2d 240, 242 (8th Dist. 1948) (holding a discernible object is "an object which [the driver] should and could have seen if he was operating his motor vehicle in the manner required by law."). Further, there is no conflicting evidence that suggests that Williams was not able to discern the

---

[3] Under *Smiddy*, a "truck stopped on a highway in a driver's path during daylight hours is, in the absence of extraordinary weather conditions, a reasonably discernible object as a matter of law." *Smiddy, supra*, at 40. However, in the case before this Court, we need not ultimately decide that the Secord Tanker was a reasonably discernible object as a matter of law because there is no issue of fact as to whether the Secord Tanker was reasonably discernible to Williams.

presence of the Secord Tanker ahead of him before he collided with it.[4] Doc. 139, Ex. B. *See Tomlinson v. City of Cincinnati*, 4 Ohio St.3d 66, 69, 446 N.E.2d 454, 456 (1983) (holding that a jury question is created based on the introduction of conflicting evidence regarding one of the elements of the ACDA test.). Based on Williams's testimony, there is no genuine issue of material fact for the jury to consider as to whether the Secord Tanker was a reasonably discernible object. *See Grout supra*, at *6; *Shooter, supra*, at ¶ 27; *Kaip v. Estate of Smith*, 6th Dist. Erie No. E-05-037, 2006-Ohio-323, ¶ 13;

{¶32} The dissent does not take issue with the facts that form the basis of our analysis but would apply a different analytical framework to these facts. Dissent, *infra*, at ¶ 141. In our opinion, we have applied the analytical framework for the ACDA rule consistently to Williams's actions before and after he encountered the fog bank. The dissent would not apply the ACDA analytical framework to Williams's actions before he entered the fog bank and would apply a variation of the ACDA analytical framework to his actions after he emerged from the fog bank. Dissent, *infra*, ¶ 141-147. Thus, the dissent's primary disagreement with our

---

[4] In Williams's response to the motions for summary judgment, he does not identify any evidence that conflicts with his testimony (1) that he was able to see the Secord Tanker before he struck it or (2) that he was able to react to the presence of the Secord Tanker by braking and steering his vehicle to the right. We note that Williams attached an affidavit from the front seat passenger of his Pickup, Albert Schmucker ("Schmucker"), to his response to the motions for summary judgment. Doc. 139, Ex. B. In this affidavit, Schmucker stated that he saw someone on the side of the road "waving his arms in a manner that indicated to me that traffic should slow down." Doc. 139, Ex. B. He also stated that he saw "a tanker truck stopped in our lane of traffic" when they emerged from the fog. Doc. 139, Ex. B. He also stated that Williams "attempted to veer right" before striking the Secord Tanker. Doc. 139, Ex. B. These statements do not identify a genuine issue of material fact because these statements are consistent with Williams's testimony as to the discernibility of the Secord Tanker. Doc. 139, Ex. B. Williams Deposition, 40, 48-49, 75-76, 126.

opinion appears to be over how the presence of the fog bank, as an obstruction, should affect the legal analysis of the facts established by Williams's testimony. We will examine both halves of the dissent's analytical framework in turn.

{¶33} Regarding Williams's testimony as to what happened before he drove into the fog bank, the dissent would apply an analytical framework based on the reasonable speed rule instead of the analytical framework provided by The Ohio Jury Instructions for the ACDA rule in R.C. 4511.21(A). Ohio Jury Instructions, CV Section 411.19 (Rev. Dec. 6, 2014). Dissent, *infra*, at ¶ 140. The dissent correctly notes that R.C. 4511.21(A) contains two clauses:

> **(A) [1-The Reasonable Speed Rule:] No person shall operate a motor vehicle * * * at a speed greater or less than is reasonable or proper, having due regard to the traffic, surface, and width of the street or highway and any other conditions, and [2-The Assured Clear Distance Rule:] no person shall drive any motor vehicle * * * in and upon any street or highway at a greater speed than will permit the person to bring it to a stop within the assured clear distance ahead.**

R.C. 4511.21(A). According to the dissent, Williams failed to maintain an ACDA of his vehicle but did not violate the ACDA rule. Dissent, *infra*, at ¶ 117. Rather, the dissent contends that Williams's actions before he entered the fog bank only violated the reasonable speed rule. Dissent, *infra*, at ¶ 141.

{¶34} The dissent would apparently hold that the failure to drive at a speed that considers "bends[,] * * * twists in the highway, crests in the road, dim lights, fog, sleet, rain, or blinding lights of approaching motor vehicles * * *" constitutes a

violation of the reasonable speed rule. Dissent, *infra*, at ¶ 141, quoting *Roszman*, *supra*, at 258. However, this Court has previously held that "[n]either bends nor twists in the highway, crests in the road, dim lights, fog, sleet, rain, or blinding lights of approaching motor vehicles will excuse [a driver] from *the duty to drive so that he can stop his vehicle within that assured clear distance ahead*." (Emphasis added.) *Roszman, supra*, at 258, quoting 6A Ohio Jurisprudence 2d 377, Section 355. Further, the dissent's view is not only inconsistent with our prior case law but is also in conflict with the logic of the ACDA rule.

{¶35} In order to comply with the ACDA rule, a driver must maintain an assured *clear* distance ahead of his vehicle within which she is able to stop. R.C. 4511.21(A). If a condition—such as fog or a curve in the highway—obstructs a driver's view of the roadway ahead, then the ACDA of that vehicle ends where that condition limits the driver's visibility. *See Daniels v. Williams*, 2d Dist. Montgomery No. 96-CA-146, 1997 WL 369325, *1-2 (July 3, 1997); *Grout, supra*, at *4-5. Thus, drivers must travel at a speed that enables them to stop by the point at which their vision is ended by a condition that obstructs their view. *Woods, supra*, at 387, quoting *Smiley v. Arrow Spring Bed Co.*, 138 Ohio St. 81, 89, 33 N.E.2d 3, 7 (1941) (holding that a driver "may * * * assume nothing that is not assured to him by the range of his vision." *See also* Ohio Jury Instructions, CV Section 411.19 (Rev. Dec. 6, 2014).

{¶36} If a condition completely obstructs a driver's view of the roadway ahead, then a driver would have to stop in order to maintain an ACDA of his vehicle. *Woods, supra*, at 390-391. *Parnell, supra*, at 129, quoting 6 Ohio Jurisprudence (2d), 473, Section 240. A person who drives blindly is not assuring himself a clear distance ahead of his vehicle. Thus, the fact that a condition obstructs a driver's view of the roadway ahead does not suspend the applicability of the ACDA rule in R.C. 4511.21(A). *See Roszman, supra*, at paragraph two of the syllabus. Rather, conditions that obstruct a driver's view of the roadway are valid considerations in an ACDA analysis because the speed that is necessary to maintain an ACDA varies based upon the presence or absence of such conditions on the roadway.[5] *Id. See also Blackford v. Kaplan*, 135 Ohio St. 268, 272, 20 N.E.2d 522, 525 (1939) (holding that drivers must proceed "at such a speed that he could stop within the assured clear distance ahead considering the fog.").

---

[5] The Ohio Jury Instructions for the reasonable speed rule in R.C. 4511.21(A) include considerations that overlap with those included in the Ohio Jury Instructions for the ACDA rule:

> **5. FACTORS AND CONSIDERATIONS. In deciding whether the speed of the driver was reasonable or proper, you must consider the permanent physical features of the scene, the hour of day or night, the extent of other traffic, the width and nature of the roadway, and any other conditions existing at that time of the accident.**
>
> **6. OBSTRUCTED VISION (ADDITIONAL). If a driver's vision is completely obscured, it is his/her duty in the exercise of ordinary care to slow down or stop, if necessary, until his/her vision is at least in part restored.**

Ohio Jury Instructions, CV Section 411.17 (Rev. Dec. 6, 2014). These considerations for the reasonable speed rule and the ACDA rule necessarily overlap because these two rules are not mutually exclusive. An ACDA rule violation arguably involves a reasonable speed rule violation because a driver is not, as a general matter, proceeding at a reasonable speed if he or she is proceeding at a pace that is too fast to maintain an ACDA of his or her vehicle. Thus, the dissent's assertion that Williams violated the reasonable speed rule need not mean that Williams did not violate the ACDA rule.

{¶37} Ohio courts have interpreted the ACDA rule in this manner and have relied on this logic in applying this statutory provision:

> [Ohio's ACDA rule] forbids any speed which will not permit the driver to stop his car within the assured clear distance ahead. That distance, by reason of darkness, fog, or other natural conditions may be nothing, in which case the speed must be nothing. If [a] driver cannot see that which is in his path, there is no assured clear distance ahead. There is essentially no difference in principle between the diminution of such assured clear distance by a bend in the road, the brow of a hill, blinding lights, darkness or a fog. Either the driver can see where he is going or he cannot. * * * Inability to see what lies ahead, whether it be in the case of an individual or the driver of a motor vehicle, requires that the movement forward shall be appropriately decreased if necessary to a stop.

*Schroff, supra,* at 286. *See also Woods, supra*, at 387; *Parnell, supra*, at 129; *Purcell, supra*, at ¶ 19; *Pleimann, supra*, at ¶ 17.

{¶38} Thus, the fact that the fog bank obstructed Williams's view of the roadway ahead of him does not render the ACDA rule inapplicable to the facts of this case. Williams needed to drive at a speed that maintained an assured clear distance between his vehicle and the point at which his vision ended on the roadway ahead of him. Williams was driving too fast to maintain an ACDA of his vehicle because, as the dissent notes, he emerged from the fog bank unable to stop before he struck the Secord Tanker. Dissent, *infra*, at ¶ 117.

{¶39} In this case, however, summary judgment is ultimately appropriate because Williams failed to maintain an ACDA before he entered the fog *and then* struck a reasonably discernible object after he emerged from the fog. We

determined that the Secord Tanker was a reasonably discernible object because Williams saw and responded to its presence after he emerged from the fog bank but before he collided with it. The dissent disagrees with this conclusion because it would have the following rule govern this analysis: "R.C. 4511.21(A) does not apply "unless the object struck was discernible for 'a time sufficient to allow the driver to avoid it with the exercise of reasonable care.'" *Venegoni v. Johnson*, 10th Dist. Franklin No. 01AP-1284, 2002 WL 655279, *5 (April 23, 2002). *See* Dissent, *infra*, at ¶ 145.

{¶40} However, this particular rule is properly applied to analyze the reasonable discernibility of an object where there is some evidence that it suddenly appeared in a driver's line of travel. *Lancaster v. Selmeyer*, 1st Dist. Hamilton No. C-820571, 1983 WL 8840, *3 (May 18, 1983); *Smith v. Torbett*, 142 N.E.2d 868, 873 (2d Dist. 1956); *Anessi v. Bernhard*, 2d Dist. Greene No. 84-CA-5, 1985 WL 7629, *4 (Jan. 30, 1985); *Franklin v. Reed*, 8th Dist. Cuyahoga No. 69800, 1996 WL 476468, *2 (Aug. 22, 1996); *Gall v. Konzelman*, 9th Dist. Lorain No. 96CA006481, 1997 WL 164310, *2 (Apr. 2, 1997); *Self v. Keeney Trucking, Inc.*, 11th Dist. Lake No. 95-L-027, 1995 WL 815361, *4 (Dec. 29, 1995).

{¶41} Under the sudden appearance prong of the ACDA test,

> **the assured-clear-distance-ahead rule has no application in a situation where a person, motor vehicle or object suddenly enters the path of another motor vehicle from the side, unless such person, motor vehicle or object comes into the view of the operator of the other motor vehicle at a point sufficiently distant**

> **ahead to enable such operator, in the exercise of ordinary care, to stop his vehicle and avoid a collision.**

*Sherer v. Smith*, 155 Ohio St. 567, 570, 99 N.E.2d 763, 765 (1951), citing *Erdman, supra*. *See Roszman, supra*, at paragraph three of the syllabus (holding that "[a] sudden emergency can cut down or lessen the assured clear distance ahead, but only if the obstruction is placed in the lane of travel so shortly prior to the moment of collision as to give no interval reasonably sufficient to adapt speed to the new situation.").[6]

{¶42} Thus, the sudden appearance prong prevents the application of R.C. 4511.21(A) to a situation in which an object, which was not stationary or moving forward ahead of the driver in his or her line of travel, suddenly enters the driver's line of travel from the side "*within* the [driver's] assured clear distance ahead." (Emphasis sic.) *Woods, supra*, at 388. *See also McFadden, supra*, at 436. In other words, the driver had an ACDA of his vehicle, but this ACDA was "cut down or lessened" by the sudden intrusion of a peripheral object into the driver's line of travel. *Mitchell v. Kuchar*, 8th Dist. Cuyahoga No. 85363, 2005-Ohio-3717, ¶ 20, quoting *Venegoni* at *2.

---

[6] The language of this rule cited by the dissent has varied in cases with some courts inquiring into whether the driver had "sufficient distance" or a "sufficient interval" instead of "sufficient time" to avoid a reasonably discernibly object in his or her line of travel after it came into view. *Sherer, supra*, at 570; *Roszman, supra*, at paragraph three of the syllabus. This variation in wording does not change the substance of the rule as distance and time are essentially parallel considerations in the process of applying a speed statute.

{¶43} When a peripheral object intrudes into a driver's direct line of travel within his or her ACDA, the driver may not, in the exercise of reasonable care, have had the opportunity to adjust his or her speed to the presence of this object and maintain an assured clear distance between his or her vehicle and this peripheral object. Thus, the ACDA rule operates in such a situation only when the peripheral object was "a discernible object in the front and within the directional line of [the driver's] travel *for a time sufficient* to allow [the driver] to avoid the accident with reasonable care." *Schade v. Carnegie Body Co.*, 70 Ohio St.2d 207, 210, 436 N.E.2d 1001, 1003 (1982) (applying this rule where there was some evidence that a pedestrian "may have altered her path on the berm so as to briefly place a portion of her body on the highway at the instant she was struck.").

{¶44} In this case, the Secord Tanker was not a peripheral object that intruded from the side into William's direct line of travel. The testimony in the record indicates that the Secord Tanker was a stationary object in the roadway ahead of Williams in his direct line of travel. Williams Deposition, 40, 48-49. Gray Deposition, 48. Since the Secord Tanker did not suddenly appear on the roadway ahead of Williams, we need not consider whether Williams had sufficient time to regain an ACDA with the Secord Tanker after he saw it. Williams did not strike the Secord Tanker because it cut into or lessened his ACDA but because he was driving too fast to maintain an ACDA of his vehicle. *Daniels, supra*, at *2. If Williams had guaranteed himself an ACDA of his vehicle prior to entering the fog bank, he would

not have collided with the reasonably discernible Secord Tanker after he emerged from the fog bank. *See Daniels, supra*, at *2; *Grout, supra*, at *5.

{¶45} We also note that the dissent would herein apply a rule that inquires into whether Williams had "sufficient time" to stop after he discerned the Secord Tanker but also argues that speed is not to be considered as part of an ACDA analysis. Dissent, *infra*, ¶ 117, 120, 123. The dissent correctly notes that speed is not expressly listed as an element of the Ohio Supreme Court's ACDA test. Dissent, *infra*, at ¶ 117. However, the time that a driver has to avoid a collision is directly tied to the speed at which a driver is travelling. How could the rule cited by the dissent, which requires an analysis as to whether an object was reasonably discernible for a sufficient time, be applied without consideration of the speed that the driver was travelling? *See McFadden, supra*, at 442. *See also Woods* at 390-391, quoting *Snouffer* at 549; *Shooter, supra*, at ¶ 13 (holding that R.C. 4511.21 is a "speed statute" and that the issue, under this statute, is whether the driver "operated [his or] her vehicle at a speed greater than was reasonable and proper so that [he or] she could not stop within the assured clear distance ahead.").

{¶46} We turn now to the arguments that Williams raises on appeal. His first argument is that the vehicle he struck was not reasonably discernible to him as he drove because there was heavy fog around the scene of the accidents that morning. There is no dispute that there was heavy fog at the scene of the accidents on the morning of February 5, 2013. All of the witnesses who were present at the time of

the accidents similarly described the fog that morning as "thick," "dense," "spotty," and "patchy." Black Deposition, 10. Van Deilen Deposition, 24. Janssens Deposition, 63. Pursley Deposition, 52. Anderson Deposition, 45. Cusick Deposition, 11. Williams Deposition, 36.

{¶47} However, in *Woods v. Brown's Bakery*, the Supreme Court of Ohio applied R.C. 4511.21(A) to a situation in which a driver was travelling through "pockets of heavy fog" and collided with another vehicle. *Woods, supra*, at 384. Quoting an "analogous case involving fog conditions," the Supreme Court stated:

> **Fog is fog and its obscurative qualities are known to all individuals who possess even the slight amount of intelligence legally required to qualify one to drive an automobile on the public highways. When plaintiff drove his car into a fog bank which hid a truck from his view, he simply spurned prudence and relied on chance. That chance failed him is his misfortune * * *.**

*Id.*, quoting *Notarianni v. Ross*, 384 Pa. 63, 66, 119 A.2d 792, 793 (1956). *See Roszman, supra*, at 258; *Purcell, supra*, at ¶ 19. "If a person driving in a fog can only see 30 feet he must drive so that he can stop within 30 feet." *Woods, supra*, at 390-391, quoting *Snouffer v. Potter Lumber & Supply Co.*, 77 Ohio App. 546, 549, 64 N.E.2d 77, 79 (2d Dist. 1945). Thus, the presence of heavy fog does not, by itself, excuse a driver's failure to maintain an ACDA. *Id*.

{¶48} Further, the presence of fog, by itself, also does not necessarily create a question of fact for the jury to decide as to whether the object a driver struck was reasonably discernible. *See Kaip, supra*, at ¶ 13. The dissent cites a number of

cases to argue that a jury question exists as to whether an object in fog or extraordinary weather conditions was reasonably discernible. Dissent, *infra*, ¶ 144. However, in these cases the driver either did not discern the object before colliding with it or died in the collision, leaving what the driver did or did not discern before the collision unknowable. *Sabo, supra*, at 71 (the driver did not see a tractor-trailer); *Junge v. Brothers*, 16 Ohio St.3d 1, 2, 475 N.E.2d 477, 479 (the driver died in the collision); *Sharp v. Norfolk & Western Ry. Co.*, 36 Ohio St.3d 172, 173, 522 N.E.2d 528, 529 (1988) (the driver died in the collision). *See Smiddy, supra*, at 217-218. Thus, in these cases, there was a jury question as to whether the object struck was a reasonably discernible object that the driver could or should have discerned.

{¶49} Another case that the dissent mentions that is worth considering at this juncture is *Blair v. Golf-Kirby Co.*, *supra*. In this case, Blair turned into a lane of traffic and "was unable to stop before he drove into an unlighted, and otherwise unmarked, hole where a twelve-foot long, sixfoot wide, three-foot deep section of the highway had been removed." *Id*. at 6. The Supreme Court found that the discernibility of this hole presented a question of fact for the jury to decide because Blair "did not see the hole until he was practically in it." *Id*. at 11. The Supreme Court determined that reasonable persons could find "that the regularity and size of the hole might make it less * * * discernible" or "they could * * * [find] that '[t]he fact that an entire section of the highway had been removed is precisely why [Blair] could not discern the hole.'" *Id*.

{¶50} In *Blair*, the Supreme Court determined that the properties of the hole itself created a question of fact as to whether the hole was reasonably discernible. *Blair* at 11. Under the reasonably discernible prong of the ACDA test, courts have considered whether the "nature of the object" struck prevented it from being reasonably discernible. *McFadden, supra*, at 435. *See DiFederico v. Reed*, 21 Ohio App.2d 137, 414-143 255 N.E.2d 869, 873-874 (10th Dist. 1969). *See also Sobery v. Greyhound Lines, Inc.*, 2019-Ohio-1371, 135 N.E.3d 343, ¶ 64 (8th Dist.) (holding under Pennsylvania's ACDA law that an object is not discernible if it is "deceptive in appearance or camouflaged * * *."), quoting *Unangst v. Whitehouse*, 235 Pa.Super. 458, 463-464, 344 A.2d 695.

{¶51} However, in the case before this Court, Williams notably does not identify any specific properties of the Secord Tanker itself that prevented it from being reasonably discernible. Rather, Williams argues that the foggy condition surrounding the Secord Tanker prevented it from being reasonably discernible. The Secord Tanker was itself a reasonably discernible object behind an obstructive condition—the fog. As we have already discussed, Williams discerned the fog on the roadway and, in order to maintain an ACDA, had to account for the presence of this obstructive condition on the roadway as he set his speed.

{¶52} Second, Williams argues that the fog was "patchy" that morning and that he could not determine the density of the fog bank behind the waving pedestrian before he drove into it. Williams Deposition, 36, 73-74. Williams testified that he

went in and out of patches of fog before he reached the fog bank as he was driving on the morning of the accident. *Id.* He stated that the fog "got patchier and thicker" as he drove until he reached a fog bank, which was located just before the scene of the accidents. *Id.* at 36, 68, 85, 38.

{¶53} He testified that this fog bank was the "thickest part of the fog" that he had encountered. *Id.* He described passing through this fog bank as follows: "You couldn't see in front of you, and it was only for a split second that it lasted." *Id.* 46-47. During his deposition, Williams was asked about his visibility at the time that the pedestrian was waving at the side of the road. Williams Deposition, 72. He stated that "[i]t was like a patch of fog, just went in and did nothing. At the time that he started waving, that's how bad it got." *Id.* at 72. He was also asked if he could tell how dense the fog in the fog bank was before he entered it. *Id.* at 73. He replied, "[n]ot until after [the pedestrian] waved his hands and I went into it." *Id.* at 74. Williams affirmed that he "couldn't see what's behind [the pedestrian], couldn't see any other vehicles behind him." *Id.* at 74.

{¶54} However, this testimony indicates that Williams, as he was driving, could see that a patch of fog was ahead of him and that he could not easily see beyond or through that fog bank from a distance. Williams Deposition, 72. We again note that, before he entered the fog bank, Williams had a clear warning to "slow down or stop" from the waving pedestrian. In addition to perceiving the fog bank ahead of him, Williams also saw this clear "warning" to "slow down or stop."

*Id*. at 71, 74. Thus, Williams's testimony indicates that he saw a fog bank ahead of him that he could not readily see through in conjunction with seeing a pedestrian waving their hands at the side of the road as a warning.

{¶55} Further, Williams describes a momentary "white-out" condition in which he "couldn't see" for a "split second." Williams Deposition, 46-47. In *State v. Klein*, the Eleventh District considered a similar situation in which a driver was proceeding through a snowstorm and struck another vehicle in what was described as a brief "white-out condition." *Klein*, *supra*, at *1. The Eleventh District found the following:

> **Although the 'white-out' that obscured appellant's view of the truck arguably arose *quickly*, we cannot say that it arose *unexpectedly*. * * * [The] appellant conceded that he had experienced intermittent periods of snow and/or blowing wind earlier in his journey. Logic would dictate that a reasonable driver would adjust his speed downward in anticipation of the possible re-occurrence of snow and/or blowing wind creating a 'white-out' which condition, by its very nature, reduces a driver's visibility quickly, extensively, and without warning. *See Roszman v. Sammett* (1969), 20 Ohio App.2d 255, 257-258, 254 N.E.2d 51. Thus, in our view, it was not adequate that appellant travel at a speed sufficiently safe for the periodic clear conditions, as was the situation when he passed the safety plaza. Instead, appellant had an obligation to drive at a speed at which he would have been able to have maintained his ability to stop during the intermittent, inclement weather conditions.**

(Emphasis sic.) *Id*. at *5. Thus, when a driver is aware that the weather is such that a whiteout condition could arise suddenly, that driver needs to travel at a speed that

-32-

enables him to maintain an ACDA in the event that a whiteout condition arises suddenly. *Id.*

{¶56} In the case before this Court, Williams had been driving through patches of fog with varying degrees of density as he was travelling on the morning of the accident. Williams Deposition, 36. He also stated that the fog was "getting * * * thicker" as he proceeded eastbound. *Klein* at 35. Thus, his testimony clearly indicates that he was aware of the nature and existence of the foggy conditions on the roadway. *Id.* at 35-36. The presence of the fog delayed Williams's ability to perceive the Secord Tanker but did not ultimately prevent him from discerning the Secord Tanker. Under R.C. 4511.21(A), Williams had a duty to travel at a pace that accounted for the reduced visibility that came with the presence of the patchy fog on the roadway that morning.

{¶57} Further, in *Kaip v. Estate of Smith*, the Sixth District considered a case in which a driver was travelling through "patchy fog" and struck a vehicle that he "never saw." *Kaip, supra*, at ¶ 13. In that case, a State Highway Patrol Officer testified as to the conclusions of his investigation of the accident scene. He stated that the driver was going too fast; that the driver could have seen the vehicle if he had been going at an appropriate speed; and that the driver did not maintain ACDA. *Id.* at ¶ 12. The Sixth District found that "[b]ased on Kaip's admission that he was traveling 50 to 55 m.p.h. in foggy conditions, we conclude that there is no genuine

issue of material fact as to whether or not Kaip failed to maintain an assured clear distance." *Id*. at ¶ 13.

**{¶58}** In the case before this Court, two law enforcement officers testified that their investigation concluded that Williams failed to maintain an ACDA and that this failure caused his collision with the Secord Tanker. Spallinger Deposition, 82-84. Gray Deposition, 48-49. However, unlike in *Kaip*, Williams actually discerned the presence of the Secord Tanker and the scene of the accidents ahead of him. Williams Deposition, 40, 48-49, 126. Further, Williams even engaged in measures to avoid a collision before he struck the Secord Tanker. *Id*. For these reasons, the fact that Williams could not determine precisely how dense the fog was does not change our analysis. Williams had to factor into his speed the foggy conditions of the roadway in order to maintain an ACDA of his vehicle. *See Woods, supra*, at 384; *Klein, supra*, at *5; *Kaip, supra,* at ¶ 13.

**{¶59}** The dissent asserts that the scene of the accidents may not have been reasonably discernible because Janssens, who was driving the Secord Tanker, affirmed that he would consider Messman's vehicle to be a "hidden hazard" in the dense fog. Dissent, *infra*, at ¶ 138, citing Janssens Deposition, 84-85. Janssens testified that he was able to see Messman's vehicle for a second after she pulled in front of him but that he was unable to brake before he collided with her. Janssens Deposition, 80. However, Janssens continued forward from this point, pushing

Messman's vehicle roughly four hundred and fifty feet beyond where he initially struck her in the intersection. *Id*.

{¶60} Thus, when Williams was driving through this same area, the Secord Tanker had come to rest hundreds of feet away from the point that Janssens described his collision with Messman's vehicle. *See* Doc. 68, Ex. D. In contrast to Janssens, at the time of Williams's collision, the Secord Tanker was far enough beyond the fog bank—after the fog "disappeared"—that Williams had time to brake, "look for a way out," determine there was not space to steer left, and swerve his vehicle to the right in response to seeing the Secord Tanker. Williams Deposition, 40, 48-49.

{¶61} The dissent next points to Pursley's testimony. Pursley, who was driving the Marten Transport Vehicle, testified that he saw red lights on the shoulder on the right side of the road and, in response, began to merge into the left lane. Pursley Deposition, 58-59. He then saw red lights "dead ahead" of him and then swerved toward the median, striking an object he could not identify on his way off of the road. *Id*. He reported driving in between forty-five and fifty miles per hour in this stretch of highway. *Id*. at 83.

{¶62} However, at the time and at the speed that Williams was travelling through this area, he could see and respond to the presence of the Secord Tanker. Unlike Pursley, Williams's attention was not divided between red lights on the right side of the road, red lights ahead of him, and a lane change as he drove on this stretch

of highway. *See Hale v. State Farm Mut. Auto. Ins. Co.*, 5th Dist. Stark No. 2017CA00223, 2018-Ohio-3035, ¶ 19 (in which the distraction of one vehicle swerving to avoid another stopped vehicle on the roadway interfered with the driver's ability to discern the stopped vehicle ahead). He was looking forward at the Secord Tanker when he drove through the fog bank.

**{¶63}** We note, however, that Schleinkofer—who was driving the vehicle most similarly situated to Williams—stated, in his police report, that he saw the scene of the accidents, "noticing stopped trucks and people waving the arms warning us." Schleinkofer also stated that he had time to "t[ake] * * * action to avoid the * * * accident by braking and moving left toward [the] median." Doc. 68, Ex. D. See Doc. 68 Ex. E. Regardless of the situation before Williams was present, however, the Secord Tanker was reasonably discernible—according to Williams's own testimony—at the time that he drove onto the scene.

**{¶64}** Third, Williams argues that he was travelling at an "extremely reduced speed" as he approached the fog bank. Appellant's Brief, 13. The evidence in the record indicates that Williams was driving at fifty-five miles per hour within sixty seconds of crashing into the vehicle in front of him. Doc. 128, Ex. D.[7] The speed

---

[7] Williams was sent a set of interrogatories from Secord Farms and Janssens. Doc. 128, Ex. D. One of these interrogatories read, "What speed were you travelling within 60 seconds prior to impact with the Pursley/Marten Transport and/or the Secord Tanker including the speed at impact." *Id.* In response, Williams objected to this interrogatory on the grounds that it assumed that he struck either the Marten Transport or Secord vehicles. *Id.* He still answered that he "was traveling at 55 mph or possibly slower and was being passed by other traffic." *Id.* However, during his deposition, Williams stated that he was driving between thirty and sixty miles per hour. Williams Deposition, 68. He also stated that he did not remember what speed he was going at the time of the accident. *Id.* at 37. Williams states that reliance on this figure is misplaced

on the stretch of U.S. Route 24 where the accidents occurred was fifty-five miles per hour. Doc. 139, Ex. A. Williams further stated that, as he approached patches of fog on the roadway that morning, he adjusted his speed downward. Williams Deposition, 69.

{¶65} However, Williams's duty, under R.C. 4511.21(A) was not simply to reduce his speed. In this situation, he had a duty to reduce his speed to a level at which he could maintain an ACDA of his vehicle. The fact that he struck the Secord Tanker indicates that he, even after reducing his speed, was still driving too fast for these circumstances. If Williams had been travelling at a speed that maintained an ACDA, he would have been able to stop *after* he discerned the presence of the Secord Tanker but *before* he collided with the Secord Tanker.

{¶66} Williams submitted an affidavit that indicated that the speed limit on this road was fifty-five miles per hour. Doc. 139, Ex. A. Jeffery L. Cusick ("Cusick"), who was driving eastbound in the right lane on the morning of the accident, stated that, he was driving his GMC Yukon in between forty to forty-five miles an hour and that he "didn't feel safe" driving at fifty to fifty-five miles per hour. Cusick Deposition, 11-12, 26. He testified that he was driving at this slower pace because of the fog. *Id*. Driving at this speed, Cusick testified that the Secord

---

because the vehicle crash data indicates that he was going forty-three miles per hour two and a half seconds before his air bags deployed. Doc. 139, Ex. A. The testimony that stated he was travelling at fifty-five miles per hour gave his approximate speed sixty seconds before his collision. Thus, these figures are reconcilable as they each refer to a different timeframe.

Tanker was roughly two hundred feet in front of him and that he could not see this vehicle at that distance once it entered the fog surrounding the scene of the accidents. Cusick Deposition, 36-37. Cusick further testified that the taillights on the Secord Tanker, after it had crashed, were visible through the fog at a distance of one hundred to one hundred and fifty feet. Cusick Deposition, 41-42. However, this was before the Secord Tanker had stopped moving. *Id*. at 14.

{¶67} Another deponent in this case, Julie Ann Black ("Black"), who was driving eastbound on U.S. Route 24, testified that she was driving her car below the speed limit, travelling at roughly fifty miles per hour. Black Deposition, 12, 67. Doc. 68, Ex. B. At this speed, she testified that she could see "the silhouette" of the accidents ahead of her through the fog. *Id*. at 67. She stated two semis were on the roadway at that point. Doc. 68, Ex. B, Black Statement.

{¶68} However, as Williams approached the fog bank, he was driving a pickup truck that was towing a piece of heavy machinery and was still driving faster than both Black, who was driving a car, and Cusick, who was driving a GMC Yukon.[8] Doc. 128, Ex. D. Black Deposition, 14, 67. Cusick Deposition, 11-12. As the trial court noted in its judgment entry granting the motions for summary judgment, both Black and Cusick were safely able to navigate this stretch of the roadway on the morning of the accident. Doc. 148.

---

[8] We note that Williams's trailer was equipped with a separate set of brakes. Williams Deposition, 31.

{¶69} The dissent would offer the testimony of Cusick and Black regarding the visibility of the Secord Tanker through the fog as conflicting evidence as to the discernibility of the Secord Tanker. Dissent, *infra*, at ¶ 30-31. However, as we have already noted, the fact that Williams did not, at the pace that he was driving, readily see the Secord Tanker before he entered the fog bank does not mean that the Secord Tanker was not ultimately a reasonably discernible object. On this stretch of highway, Williams had to maintain an ACDA with the limits of his vision irrespective of the location of the Secord Tanker in the lane ahead of him. Further, Cusick and Black's testimony does not conflict with or put into dispute the facts that Williams was able to see and to respond to the presence of the Secord Tanker once he passed through the fog bank.

{¶70} Fourth, Williams argues that he took reasonable precautions to avoid danger as he further reduced his speed after he saw a pedestrian waving his hands at the side of the road. In his deposition, Williams testified that, as he drove, he saw a person standing in front of the fog bank at the side of the road. Williams Deposition, 46. This person was waving "their hands like this to stop or slow down." *Id*. at 40. In response, Williams said that he "applied the brake instantaneously, didn't slam on them, but [he] applied the brake * * *" and then drove into the fog bank ahead of him. *Id*. at 46-47. Williams affirmed in his deposition that this pedestrian was "the first warning that [he] had that there was a problem up ahead * * *." *Id*. at 71.

{¶71} According to his testimony, Williams had advance notice that there was a dangerous condition ahead. Williams Deposition, 85. His testimony indicates that he interpreted this person's gestures as signal "to stop or slow down * * *." *Id.* at 40. In response to what he interpreted to be a warning, Williams began to apply his brakes. *Id.* While the scene of the accidents was still behind the fog, the pedestrian warning drivers of the dangerous condition ahead was clearly visible to Williams. Even with this advance warning, however, Williams, as he entered a fog bank that reduced his visibility, simply did not reduce his speed commensurate to his loss of visibility such that he could stop before he struck the Secord Tanker.

{¶72} Further, Williams points to an affidavit he filed with the trial court that contained the results of an examination of his Pickup's vehicle crash system to argue that he responded to the pedestrian's advance warning by slowing down his vehicle. Doc. 139, Ex. A. Robert D. Wilcox ("Wilcox") conducted this examination. Doc. 139, Ex. A. Wilcox's report indicated that Williams was driving forty-three miles per hour two and a half seconds before his airbag deployed and twenty-six miles per hour one-half second before his airbag deployed. Doc. 139, Ex. A. Wilcox concluded that "Williams was slowing. * * * He [was] on his brakes. The engine break was also slowing the GMC. Mr. Williams had slowed to 26 MPH or 29 MPH under the posted speed limit at -0.5 seconds" before the airbag deployed. Doc. 139, Ex. A.

**{¶73}** However, the data from this examination also indicates that Williams was not applying his brakes in a manner that consistently reduced his speed. The following is the readout of Williams's speed as he approached the fog bank:

> 2.5 Seconds from Impact: 43 MPH
>
> 2.0 Seconds from Impact: 32 MPH
>
> 1.5 Seconds from Impact: 36 MPH
>
> 1.0 Seconds from Impact: 31 MPH
>
> 0.5 Seconds from Impact: 26 MPH

Doc. 139, Ex. A. While the pace of Williams's Pickup did slow from forty-three miles per hour to twenty-six miles per hour, his speed increased momentarily from thirty-two miles per hour to thirty-six miles per hour. Doc. 139, Ex. A.

**{¶74}** Thus, this report indicates that Williams was not braking sufficiently to reduce his speed consistently as he entered the fog bank. Williams testified that, when he entered the fog before the scene of the accident, his visibility was extremely reduced. *Id*. at 46-47. "You couldn't see in front of you, and it was only for a split second that it lasted." *Id*. 46-47. He then saw the scene of the accidents "and that's when I put the brake down to stop." *Id*. at 47. Thus, even though he had advanced warning of a dangerous condition ahead and faced extremely restricted visibility, he still did not brake sufficiently to consistently reduce the speed of his vehicle let alone reduce his speed sufficiently to maintain an ACDA of his vehicle. Ultimately, the fact that Williams reduced his overall speed before he entered the fog bank does

not change our reasonable discernibility analysis because he still discerned the presence of the Secord Tanker before he struck it.

{¶75} Fifth, Williams asserts that the vehicles in front of him were not reasonably discernible because the scene of the accidents "appeared suddenly." Appellant's Brief, 10. This argument seems to implicate another prong of the *Pond* test. In *Pond*, the Supreme Court of Ohio stated that, in order to establish a violation of R.C. 4511.21(A), there must be evidence that the object the driver struck "did not suddenly appear in the driver's path." *Pond, supra*, at 52.

{¶76} To argue that the scene of the accidents appeared suddenly, Williams cites *Ziegler v. Wendel Poultry Serv., Inc.* to argue that a jury question exists in this appeal as to whether the scene of the accidents "appeared suddenly." *Ziegler, supra*, at 13. In *Ziegler*, June Scott ("Scott") stopped at an intersection in dense fog before turning left onto U.S. Route 30. *Ziegler* at 10-11. Terry Hummel ("Hummel") was driving straight on U.S. Route 30 at the time that Scott turned onto this road and, unable to stop in time, struck Scott's vehicle. *Id.* The Supreme Court of Ohio found that a jury question existed in that case because

> **[e]vidence was presented from which the jury could reasonably conclude that Scott's bus suddenly appeared in Hummel's lane of travel *within Hummel's assured clear distance ahead* and rendered him unable, in the exercise of ordinary care, to avoid a collision.**

(Emphasis added.) *Id.* at 13. Since Scott's vehicle was a peripheral object that intruded into Hummel's direct line of travel, there were, under the facts of that case,

questions as to whether this object "suddenly appeared" within Hummel's ACDA. *Id.*

**{¶77}** In *Ziegler*, the question was whether a peripheral object entered the roadway within the driver's ACDA. *Id.* at 13. *Ziegler* is distinguishable from the appeal before this Court as there is no evidence in the record that Schleinkofer's vehicle was a peripheral object that suddenly intruded into Williams line of travel within his ACDA. *See Shinaver, supra*, at 54. In his response to the motions for summary judgment, Williams did not raise any arguments regarding Schleinkofer's vehicle for the trial court to consider or assert that Schleinkofer's vehicle suddenly appeared in his line of travel. Doc. 139. *See Gentile v. Ristas*, 160 Ohio App.3d 765, 2005-Ohio-2197, 828 N.E.2d 1021, ¶ 75 (10th Dist.).

**{¶78}** In the appeal before us, the issue is whether Williams had ACDA of him with objects located in his direct line of travel. Williams has not identified evidence that indicates that he was driving at a speed that was sufficient to maintain an assured clear distance between him and the objects directly ahead of him in his line of travel given the foggy conditions that prevailed on that morning. Thus, this argument does not present a question for a jury to consider.

**{¶79}** Sixth, Williams argues that he never saw Schleinkofer's vehicle.[9] However, on February 2, 2016, Williams voluntarily dismissed all of the claims

---

[9] The police determined, in their investigation, that Williams struck Schleinkofer's vehicle before Schleinkofer came to a complete stop. Gray Deposition, 45, 49, 52. Schleinkofer was turning left towards the median to avoid the Secord Tanker in his line of travel. Since Schleinkofer's vehicle was oriented left

against Schleinkofer pursuant to Civ.R. 41(A)(1)(a). Doc. 109. Schleinkofer is not a party to this appeal. The dispute between the parties to this appeal is not whether Williams saw Shleinkofer's vehicle before the collision but whether he was able to reasonably discern the presence of the Secord Tanker that he struck.

{¶80} The dissent asserts that there is a genuine issue of material fact as to whether Williams violated the ACDA rule when he struck Schleinkofer's vehicle. However, as the dissent seems to acknowledge, the issue of whether Williams violated the ACDA rule in colliding with Schleinkofer's vehicle is not an issue between the parties in the appeal before this Court. *Dissent, infra*, at ¶ 118. The issue between the parties in this appeal is whether Williams maintained an ACDA such that he was able to avoid colliding with the Secord Tanker. For this reason, we will examine the arguments regarding Schleinkofer's vehicle only to determine whether the presence of this vehicle on the highway should affect our analysis of William's collision with the Secord Tanker.

{¶81} The dissent asserts that there is a question as to whether Schleinkofer's vehicle suddenly appeared in Williams's line of travel. However, there is no evidence that Schleinkofer's vehicle was a peripheral object that intruded into Williams's ACDA. In fact, Schleinkofer's statement to the police reads as follows:

> **We were driving East on Hwy 24 in [the]** *left lane* **& it was extremely foggy with very little visibility. We encountered the**

---

towards the median, Schleinkofer's vehicle was pushed into the Secord Tanker and then into the median when Williams struck Schleinkofer's vehicle from behind. Doc. 68, Ex. D. Williams then crashed into the Secord Tanker and came to a stop. Doc. 68, Ex. D.

**accident noticing stopped trucks & people waving the[ir] arms warning us and I took action to avoid the accident by braking and moving left toward median when we were struck from behind by a truck * * *.**

(Emphasis added.) Doc. 68, Ex. D.

{¶82} The evidence in the record indicates that Schleinkofer's vehicle was directly ahead of Williams in the left lane going eastbound. Doc. 68, Ex. D. Schleinkofer's statement indicates that he was orienting his vehicle towards the median to avoid a collision with the Secord Tanker when he was struck from behind by Williams's vehicle. Doc. 68, Ex. D. Thus, the only evidence in the record regarding this matter indicates that Schleinkofer's vehicle was not a peripheral object that suddenly appeared in Williams's line of travel and, in so doing, had some impact on Williams's ability to maintain an ACDA with the Secord Tanker.

{¶83} The dissent also asserts that there is a question as to whether Schleinkofer's vehicle was reasonably discernible. However, regardless of whether Schleinkofer's vehicle was reasonably discernible, the Secord Tanker was still reasonably discernible to Williams according to his own testimony. If Williams did not perceive Schleinkofer's vehicle, then the presence of this vehicle did not affect his decision making process as he neared the Secord Tanker. Further, there is no evidence in the record that suggests the discernibility of Schleinkofer's vehicle affected the discernibility of the Secord Tanker. We again note that Williams, in his response to the motions for summary judgment, never mentioned Schleinkofer's

vehicle in any of his arguments to the trial court. Doc. 139. *See Potts v. Safeco Ins. Co.*, 5th Dist. Richland No. 2009CA0083, 2010-Ohio-2042, ¶ 26 (holding that the failure to raise an issue in a response to a motion for summary judgment results in waiver of that issue on appeal).

**{¶84}** Williams's arguments regarding Schleinkofer's vehicle do not tend to establish that he did not violate R.C. 4511.21(A) when he collided with the Secord Tanker. Williams has not identified evidence that suggests he would not have collided with the Secord Tanker in the absence of Schleinkofer's vehicle on the highway. Further, Williams has not identified any evidence that suggests that the presence of Schleinkofer's vehicle caused him to collide with the Secord Tanker. According to the police investigation, Williams was going fast enough that he struck Schleinkofer's vehicle and then struck the Secord Tanker. If anything, striking Schleinkofer's vehicle would have slowed Williams's momentum as he headed towards the Secord Tanker. Thus, the presence of Schleinkofer's vehicle does not change the fact that Williams simply failed to maintain an ACDA such that he could stop before colliding with the Secord Tanker.[10]

---

[10] The dissent asserts that there are genuine issues of material fact as to whether Williams violated the ACDA rule when he collided with Schleinkofer's vehicle. However, Williams apparently chose not to contest the issue of whether he violated the ACDA rule when he struck Schleinkofer's vehicle. Doc. 139. Williams voluntarily dismissed the claims against Schleinkofer. Doc. 109. Schleinkofer was never deposed. Williams did not mention Schleinkofer's vehicle in the arguments in his response to the motions for summary judgment. *See Snyder v. Stevens*, 4th Dist. Scioto No. 12CA3465, 2012-Ohio-4120, ¶ 15. If there were genuine issues of material fact as to whether Williams maintained ACDA with Schleinkofer's vehicle, Williams was responsible to raise, litigate, and substantiate his arguments on this issue before the trial court. *See Professional Bank Services v. Grossman DT, Inc*., 8th Dist. Cuyahoga No. 107670, 2019-Ohio-2230, ¶ 9, 13. However, as the record stands before this Court, the presence of Schleinkofer's vehicle on the highway

{¶85} In the end, Williams had advance warning of a dangerous condition ahead of him from a pedestrian at the side of the road. According to his own statements, Williams chose to proceed when he was unable to see through a dense patch of fog. Williams's testimony indicates that he discerned the scene of the accidents and the Secord Tanker in his direct line of travel before he collided with the Secord Tanker. Further, after he perceived this disabled vehicle in his direct line of travel, he reacted to its presence, braking and taking evasive action. Thus, Williams was simply and unquestionably going too fast to stop before he struck the Secord Tanker. Additionally, his testimony indicates that he could still discern the presence of the Secord Tanker before he struck it, leaving no question of fact for the jury to decide as to whether the Secord Tanker was a reasonably discernible object.

{¶86} Based on Williams's testimony, there is no genuine issue of material fact in dispute as to whether the Secord Tanker was reasonably discernible. Williams, as the nonmoving party, has not carried the burden of identifying evidence in the record of specific facts that demonstrate there is a genuine issue of material fact for trial. Thus, after reviewing the evidence in a light most favorable to the nonmoving party, we conclude that Williams failed to maintain an ACDA of his vehicle in violation of R.C. 4511.21(A) and that his conduct amounts to

does not present genuine issues of material fact as to whether Williams violated the ACDA rule when he struck the Secord Tanker.

negligence per se. The trial court did not err in granting these motions for summary judgment. The appellant's first assignment of error is overruled.

*Second Assignment of Error*

**{¶87}** Williams asserts that the earlier accident on the roadway between Janssens and Messman was a proximate cause of his accident and, therefore, contributed to his injuries. He asserts that, even if he violated R.C. 4511.21(A), he is still entitled to have the opportunity to present the issue of comparative fault to a jury.

Legal Standard

**{¶88}** An intervening act may break the "causal chain" between one person's negligent act and another person's subsequent injury. *Cascone v. Herb Kay Co.*, 6 Ohio St.3d 155, 159, 451 N.E.2d 815, 818-819 (1983).

> **'Where there intervenes between an agency creating a hazard and an injury resulting from such hazard another conscious and responsible agency which could or should have eliminated the hazard, the original agency is relieved from liability. A break in the chain of causation thereby takes place which operates to absolve the original agency.' * * * Or, stating the matter a little differently, 'where after the negligent act a duty devolves on another person in reference to such act or condition which such person fails to perform, such failure is the proximate cause of the injury resulting from the act.'**

(Citations omitted.) *Id.* at 159, quoting *Thrash v. U-Drive-It Co.*, 158 Ohio St. 465, 471-472, 110 N.E.2d 419, 422 (1953).

{¶89} "The [applicable] test * * * is whether the original and successive acts may be joined together as a whole, linking each of the actors as to the liability, or whether there is a new and independent act or cause which intervenes and thereby absolves the original negligent actor." *Cascone* at 160. The term 'new' means that the second act of negligence could not reasonably have been foreseen. *R.H. Macy & Co., Inc. v. Otis Elevator Co.*, 51 Ohio St.3d 108, 111, 554 N.E.2d 1313, 1317 (1990), quoting 1 Ohio Jury Instructions (1983), Section 11.30. "The term 'independent' means the absence of any connection or relationship of cause and effect between the original and subsequent act of negligence." *Id*. In this analysis, courts consider

**if the intervening act was capable of producing the injury irrespective of the original negligence, was not set in motion by the original negligence, and was not simply a condition on or through which the original negligence operated to produce the injurious result.**

*Reed v. Weber*, 83 Ohio App.3d 437, 442, 615 N.E.2d 253, 256 (1st Dist.) citing *Mudrich v. Standard Oil Co.*, 153 Ohio St. 31, 41 O.O. 117, 90 N.E.2d 859 (1950); *Mouse v. Cent. Savings & Trust Co.*, 120 Ohio St. 599, 167 N.E. 868 (1929).

Legal Analysis

{¶90} In this case, there was a chain of eight collisions. Doc. 8, Ex. D. Williams's collision with Schleinkofer's vehicle and the Secord Tanker was the

third collision in this chain. Doc. 8, Ex. D.[11] Williams may argue that the conditions for his collision with Schleinkofer's vehicle would not have existed "but for" the earlier collision between Messman and Janssens. However, this is not the relevant inquiry in this appeal. The issue herein is whether these earlier accidents were legally a proximate cause of Williams's injuries. Thus, we will examine the facts underlying this appeal to determine if Williams's negligence was a new and independent act that cut off liability for any negligent act that Janssens may have committed.

{¶91} First, we must determine whether Williams's negligence was a "new" cause. After the accidents, Janssens, who was driving the Secord Tanker, was cited by the police for driving at an excessive speed given the prevailing weather conditions. When drivers are travelling at excessive speeds in foggy weather, it is arguably reasonably foreseeable that the driver might not have an ACDA with a vehicle that was partially obscured by the fog ahead; that the driver might not have left himself the space to stop; and that the driver might collide with this vehicle.

{¶92} However, this does not mean that a chain of eight collisions was a reasonably foreseeable outcome of Janssens's excessive speed.

---

[11] The second collision was between the Secord Tanker and the Marten Transport Vehicle that was driven by Billy Pursley. Doc. 68, Ex. C. After the Secord Tanker had collided with Messman's vehicle, the Marten Transport Vehicle clipped the Secord Tanker as it was swerving to the left of the Secord Tanker. Doc. 68, Ex. C. The Marten Transport Vehicle then slid completely off of the eastbound lanes and into the median where it jackknifed and came to rest. Doc. 68, Ex. C. Thus, the Marten Transport Vehicle was not on the road or behind the Secord Tanker at the time that Williams subsequently came through the fog located prior to the scene of the accidents. The Marten Transport Vehicle is not, therefore, a part of this third collision.

**One is permitted to assume that others will follow the law and exercise ordinary care. As a matter of law, one need not anticipate that another driver will violate the law and that a collision will occur. Thus, such a collision is not foreseeable.**

(Citations omitted.) *McDougall v. Smith*, 191 Ohio App.3d 101, 2010-Ohio-6069, 944 N.E.2d 1218, ¶ 6 (3d Dist.), citing *Hicks v. Prelipp*, 6th Dist. No. H-03-028, 2004-Ohio-3004, 2004 WL 1293999, ¶ 10. As Janssens drove, he did not have to assume that the drivers behind him, such as Williams, were not maintaining an ACDA of them. Thus, even if Janssens committed a negligent act that contributed to the collision between him and Messman, the subsequent collision between Williams and the Secord Tanker was still not reasonably foreseeable. For this reason, Williams's failure to maintain an ACDA was a new act.

{¶93} Second, we must now determine whether Williams's negligence was an independent cause. In this case, Williams's negligence was not "set in motion" by any negligent act that Janssens may have committed. *Reed, supra*, at 442. The fact that Janssens may have been driving at an excessive speed did not cause Williams to drive too quickly to maintain an ACDA of him. Further, Williams's failure to maintain an ACDA of him was also capable of producing the injuries that he received "irrespective" of Janssens's earlier act of driving at an excessive speed. *See Sabbaghzadeh v. Shelvey*, 9th Dist. Lorain No. 98CA007244, 2000 WL 763322, *6 (June 14, 2000).

{¶94} Williams's failure to maintain an ACDA of him also was not a "condition on which the negligent act operated to produce the injurious result." *Reed, supra*, at 442. Williams committed this negligent act after the Secord Tanker had come to a complete stop. Janssens was no longer driving at an excessive speed at the time that Williams was committing his own negligent act. The collision was not caused by the simultaneous interaction of Williams and Janssens's actions. Rather, at the time of this collision, the Secord Tanker was sitting on the road disabled, having come to a complete stop. See Gray Deposition, 123. *See Smiddy, supra*, at 37-38. Any negligent act that Janssens may have committed was completed by the time Williams collided with the Secord Tanker.

{¶95} To advance his argument, the appellant relies on *Crosby v. Radenko*, 2d Dist. Montgomery No. 24343, 2011-Ohio-4662. In that case, a semi-truck had mechanical difficulties and pulled over. *Id*. at ¶ 1. The semi-truck then attempted to pull back into traffic. *Id*. Two cars behind the semi-truck were able to come to a complete stop. *Id*. at ¶ 2. Crosby, however, swerved around the two stopped cars and struck the semi-truck that was maneuvering onto the road. *Id*. at ¶ 1. The Second District found that Crosby failed to maintain an ACDA but still found that there was a jury question as to the comparative fault between Crosby and the semi-truck driver. *Id*. at ¶ 18.

{¶96} We find *Crosby* distinguishable from the case before this Court for two reasons. First, Crosby struck the semi-truck as the driver was negligently

maneuvering back onto the road. Thus, Crosby's negligent act was not an independent cause because her intervening negligent act was "a condition on or through which the [semi-truck driver's] original negligence operated to produce the injurious result." *Reed, supra*, at 442. Second, in *Crosby*, the court found that

> **the chain of events set in motion by the acts or omissions of [the semi-truck driver] * * * unfolded in rapid succession in a continuous and unbroken fashion, with a result that the causal connection between that act or omission and Crosby's injuries was not broken by Crosby's negligence per se.**

*Id*. at ¶ 56. Our district applied similar reasoning in *Yoakum v. Yoakum*, 3d Dist. Allen No. 1-90-120, 1991 WL 216908, *1 (Oct. 10, 1991). In *Yoakum*, a semi-truck jackknifed in snowy conditions and hit several vehicles ahead in the roadway. *Id*. The car behind the semi-truck came to a stop but was struck from behind by Yoakum and pushed into the semi. *Id*. This Court found that

> **[r]easonable minds could conclude that the chain of events unfolded in a rapid, continuous and unbroken fashion, with the causal connection not being broken, and that [the semi-truck driver] and [the driver of the car] were concurrent tortfeasors with * * * Yoakum.**

*Id*. at *4.[12] For this reason, the trial court's grant of summary judgment was found to be inappropriate and was reversed. *Id*. *See also Hale v. State Farm Mutual Automobile Insurance Company*, 5th Dist. Stark No. 2017CA00223, 2018-Ohio-3035, ¶ 32.

---

[12] We also note that Yoakum argued that he did not push the car in front of him into the semi-truck. *Yoakum, supra*, at *1. He asserted that the car struck the semi-truck and then he hit the car. *Id*. Thus, this fact remained in dispute as the trial court evaluated the motion for summary judgment.

{¶97} In the case before us, however, the third collision between Williams and the Secord Tanker did not "unfold[] in a rapid, continuous and unbroken fashion * * *" with the first collision between Messman and the Secord Tanker. *Yoakum* at *4. Rather, in between the first collision (which was between Messman and the Secord Tanker) and the third collision (which was between Williams and the Secord Tanker), a driver had sufficient time to safely avoid the Secord Tanker on the road; pull his car off to the side of the road; get out of his car; get to the edge of the fog; and wave his arms to warn Williams about the accidents ahead. Williams Deposition, 46. Further, a second collision, which was between the Marten Transport Vehicle and the Secord Tanker, occurred before Williams arrived at the scene of the accidents. Doc. 68, Ex. C.

{¶98} *Crosby* and *Yoakum* rely on the decision of the Ohio Supreme Court in *Shinaver v. Szymanski*, 14 Ohio St.3d 51, 471 N.E.2d 477 (1984). In *Shinaver*, Szymanski lost control of her vehicle and crashed into the median barrier. *Id*. at 51. Two cars behind her—driven by Blanchard and Allen—were able to come to a complete stop. *Id*. Scherzer, however, collided with Allen, pushing Allen into Blanchard and Blanchard into Szymanski. *Id*. Shinaver then collided with Scherzer. *Id*. Shinaver sued Szymanski, Blanchard, Allen, and Scherzer. *Id*. The trial court granted summary judgment as to all of the defendants. *Id*.

{¶99} On appeal, the Supreme Court held that

> **[w]here the plaintiff driver is travelling immediately behind the defendant driver, and both parties are negligent per se for failing to maintain the assured clear distance ahead in violation of R.C. 4511.21, the question of whether the negligence of either party was the proximate cause of the ensuing collision, in which the plaintiff driver sustained personal injuries, is for jury determination.**

*Id*. at paragraph one of the syllabus. Thus, the Supreme Court reversed the trial court's grant of summary judgment as to Scherzer, holding that an issue of comparative negligence existed for the jury to decide. *Id*. at 56.

{¶100} The rule in *Shinaver*, however, does not apply to the facts of this appeal. *Shinaver* applies where "*both* parties are negligent per se for failing to maintain the ACDA in violation of R.C. 4511.21." (Emphasis added.) *Id*. at paragraph one of the syllabus. In this case, the police investigation determined that Williams failed to maintain an ACDA. Gray Deposition, 48. While Sergeant Gray testified that Janssens was cited for excessive speed and that Janssens's unsafe speed contributed to this accident, Janssens was not cited for failing to maintain an ACDA. Gray Deposition, 55-56.

{¶101} Sergeant Gray testified that Messman was the "at fault driver that created the chain of events" because she had a stop sign and failed to yield to oncoming traffic. Gray Deposition, 64, 102-103. *See* Doc. 68, Ex. B. Sergeant Gray agreed that the intrusion of Messman's vehicle into Janssens's line of travel took this initial collision "out of the assured clear distance analysis." Gray Deposition, 112. The rule in *Shinaver* might apply in this case if both Janssens *and*

Williams had simultaneously violated R.C. 4511.21(A). However, since Janssens did not violate R.C. 4511.21(A), there is not a question of comparative fault between Janssens and Williams.

{¶102} We follow the Eighth District's reasoning in *Mitchell v. Kuchar*, 8th Dist. Cuyahoga No. 85363, 2005-Ohio-3717 and the Ninth District's reasoning in *Sabbaghzadeh v. Shelvey, supra*. In *Mitchell*, Kuchar was driving while intoxicated, fell asleep, swerved across a lane of traffic and struck a concrete barrier. *Id*. ¶ 2. Rizzo braked suddenly to avoid colliding with Kuchar's car. *Id*. At this point, Mitchell rear-ended Rizzo's vehicle. *Id*. The Eighth District found that Mitchell's failure to maintain an ACDA "constituted an independent, intervening act which absolved Kuchar of liability for the collision between Mitchell and Rizzo." *Id*. at ¶ 11. We also note that the situation in *Mitchell* was closer to a "chain of events" that "unfolded [in a] rapid, continuous and unbroken fashion" than the case currently before us. *Yoakum, supra*, at *4.

{¶103} In *Sabbaghzadeh*, a display case fell off a truck and into the roadway. *Sabbaghzadeh, supra*, at *1. A car following the truck stopped without incident. *Id*. This car had been stopped, at a minimum, for four to five minutes when a third vehicle came and struck the stopped car. *Id*. The Ninth District found that the driver of the third vehicle failed to maintain an ACDA of him and that this negligent act "was in itself an efficient, independent, and self-producing cause of his own injury." *Id*. at *6.

{¶104} We also note that in *Mitchell* and *Sabbaghzadeh*, the appellant was able to advance a strong argument that, but for the defendant's earlier negligent act, the collision in which the appellant was involved would not have happened. Williams, however, is not able to advance a similarly strong argument. He has not demonstrated, by identifying facts in the record, how his collision with the Secord Tanker would not have occurred in the absence of Janssens's excessive speed. The police investigation determined that Messman was at fault for the collision with the Secord Tanker because she failed to yield to oncoming traffic.

{¶105} While Janssens's excessive speed contributed to the initial accident, there is no evidence in the record that the collision between Messman and Janssens would not have happened if Janssens had been going at a slower pace. Thus, the initial accident did not ultimately occur because Janssens was driving too fast to maintain an ACDA. The initial accident occurred because Messman pulled out in front of Janssens at a slow speed. As to the accident between Janssens and Messman, Janssens's excessive speed may be a relevant factor for a jury to consider. However, the evidence in the record does not establish that Janssens's excessive speed is relevant to the collision between Williams and the Secord Tanker. Thus, Williams cannot make the same arguments as the appellants in *Mitchell* and *Sabbaghzadeh*.

{¶106} In the end, regardless of whether Janssens committed a negligent act, Williams was a "conscious and responsible" agent who came upon the disabled

Secord Tanker that was stopped in the roadway. *Cascone, supra*, at 159. As a disabled vehicle, the Secord Tanker was not in an unlawful position on the roadway.[13] *See* Gray Deposition, 123. R.C. 4511.21(A) imposed a legal duty upon Williams with reference to this roadway hazard: Williams had to maintain an ACDA of his vehicle such that he could avoid colliding with any reasonably discernible object in his line of travel.

{¶107} If Williams had operated his vehicle in compliance with R.C. 4511.21(A), he would have been able to eliminate the hazard created by the prior collision. He could have prevented all of his injuries had he complied with the law. However, his own negligent act came in between the prior hazard and his own injury. Rather than eliminate the hazard, he failed to perform his legal duty, and this "failure [was] the proximate cause of the injury resulting from this act." *Cascone, supra*, at 159, quoting *Thrash, supra*, at 471-472.

{¶108} For these reasons, we conclude that Williams's failure to maintain an ACDA was a new and independent cause of his own injury. *See Sabbaghzadeh, supra*, at *6. Therefore, there is no issue of comparative fault to be submitted to a

---

[13] This fact distinguishes the issues in this appeal from a line of cases that consider vehicles unlawfully parked or stopped in the roadway in violation of R.C. 4511.66. *See Pleimann v. Coots*, 2d Dist. Greene No. 2002-CA-54, 2003-Ohio-316; *Piper v. McMillan*, 134 Ohio App.3d 180, 730 N.E.2d 481 (7th Dist. 1999); *Purcell v. Norris*, 10th Dist. Franklin No. 04-AP-1281, 2006-Ohio-1473. Disabled vehicles, such as the Secord Tanker, are rendered unable to comply with R.C. 4511.66 and are expressly exempted from R.C. 4511.66 prohibition on "stop[ping], park[ing] or leave standing any vehicle * * * upon the paved or main traveled part of the highway." R.C. 4511.66. *See Smiddy, supra*, at 38. Thus, the Secord Tanker was not in an unlawful position on the roadway at the time of the collision with Williams.

jury for consideration. Thus, the trial court did not err in granting summary judgment as to this issue. His second assignment of error is overruled.

*Third Assignment of Error*

{¶109} Williams argues that Progressive is contractually obligated to provide underinsured motorist insurance benefits, alleging that he (1) did not violate R.C. 4511.21(A) because the scene of the accidents was not reasonably discernible and (2) that he is entitled to a comparative fault analysis.

Legal Standard

{¶110} R.C. 3937.18(A) governs uninsured and underinsured motorist coverage and reads, in its relevant part, as follows:

> **(A) Any policy of insurance delivered * * * in this state with respect to any motor vehicle registered * * * in this state that insures against loss resulting from liability imposed by law for bodily injury or death suffered by any person arising out of the ownership, maintenance, or use of a motor vehicle, may, but is not required to, include * * * underinsured motorist coverage * * *.**
>
> * * *
>
> **(D) With respect to the * * * underinsured motorist coverage * * * included in a policy of insurance, an insured shall be required to prove all elements of the insured's claim that are necessary to recover from the owner or operator of the * * * underinsured motor vehicle.**

R.C. 3937.18(A), (D). Ultimately, "[a]n insurance policy is a contract * * *. *Sarmiento v. Grange Mut. Cas. Co.*, 106 Ohio St.3d 403, 2005-Ohio-5410, 835 N.E.2d 692, ¶ 8. Thus, "R.C. 3937.18(D) is a default provision, governing in the

absence of additional policy provisions requiring more." *Snyder v. Am. Family Ins. Co.*, 114 Ohio St.3d 239, 2007-Ohio-4004, 871 N.E.2d 574, ¶ 26.

{¶111} Beyond the express requirements of R.C. 3937.18(A), "parties are free to agree to the contract's terms" "absent a specific statutory or common-law prohibition." *Id.*, at ¶ 24. "R.C. 3937.18(I) expressly permits the parties to agree to other specified conditions to, or exclusions from, uninsured/underinsured-motorist coverage." *Id.* at ¶ 26. "A court has the duty to enforce an insurance contract as made by the parties * * *." *Currier v. Penn-Ohio Logistics*, 187 Ohio App.3d 32, 2010-Ohio-198, 931 N.E.2d 129, ¶ 57.

Legal Analysis

{¶112} The underinsured motorist coverage endorsement ("UIM Provision") in the insurance contract between Progressive and Williams's employer contains the following provision:

> **If you pay the premium for this coverage, we will pay for damages** *that an insured is legally entitled to recover from the owner or operator of an underinsured auto* **because of bodily injury:**
>
> **1. sustained by an insured;**
>
> **2. caused by an accident; and**
>
> **3. arising out of the ownership, maintenance, or use of the underinsured auto.**

(Emphasis added.) Doc. 128, Ex. A. Progressive argues that Williams is not entitled to recover under the UIM Provision because he has not demonstrated that he is "legally entitled to recover" from another party to this action.

{¶113} Williams, however, argues that he is legally entitled to recover under this UIM Policy. In his brief, Williams states that

> **[t]he finding that Progressive is not responsible for providing uninsured/underinsured motorists coverage pursuant to their contract hinges on the finding that Williams violated the Assured Clear Distance Ahead statute—which he did not, and that he is not entitled to comparative fault analysis.**

Appellant's Brief, 22. Thus, Williams essentially reasserts his arguments from his first and second assignments of error. The only difference is that he, in his third assignment of error, asserts these arguments against Progressive instead of Janssens and Secord Farms.

{¶114} In order to establish that he was entitled to coverage under Progressive's UIM Policy, Williams had to demonstrate that he was "legally entitled to recover from the owner or operator of an underinsured auto * * *." Doc. 128, Ex. A. Under the first assignment of error, we determined that Williams was negligent per se for failing to maintain an ACDA of his vehicle. Under the second assignment of error, we further determined that Williams's negligence was a new and independent intervening act that cut off liability for the disabled vehicles ahead of him. Thus, Williams was not able to demonstrate that he was legally entitled to recover from Messman, Janssens, or Secord Farms.

{¶115} Further, Williams voluntarily dismissed Schleinkofer pursuant to Civ.R. 41(A)(1)(a). Doc. 109. Schleinkofer was the only other vehicle that was involved in the third collision on the morning of February 5, 2013. Since Schleinkofer was voluntarily dismissed as party to this action, Williams has clearly not demonstrated that he is legally entitled to damages from Schleinkofer. Thus, Williams has not been able to satisfy a precondition of the UIM Policy as to any of the other relevant parties to this action. For this reason, summary judgment is appropriate as to Progressive. Williams's third assignment of error is overruled.

*Conclusion*

{¶116} Having found no error prejudicial to the appellant in the particulars assigned and argued, the judgment of the Paulding County Court of Common Pleas is affirmed.

***Judgment Affirmed***

**PRESTON, J., concurs in Judgment Only.**

**ZIMMERMAN, J., Dissenting**

{¶117} I respectfully dissent from the lead opinion's decision affirming the trial court's decision granting summary judgment in favor of Janssens, Secord Farms, and Progressive. I do not dispute that there is no genuine issue of material fact that Williams was not driving at an appropriate speed which would have enabled him to maintain an assured clear distance ahead. That fact is patently

obvious from the circumstances of this case—that is, there is no dispute that Williams collided with the black Nissan Altima operated by Schleinkofer, then (at the accident scene) the Secord Tanker operated by Janssens. However, that Williams was operating his vehicle at a greater speed than would permit him to bring it to a stop within the assured clear distance ahead is not dispositive of a violation of the assured-clear-distance-ahead ("ACDA") rule. The lead opinion not only disregards that speed is not an element of the ACDA rule, but the opinion also bypasses the evidentiary disputes which must be presented to a jury for resolution to determine whether Williams violated the ACDA rule: (1) whether the black Nissan Altima operated by Schleinkofer was reasonably discernible or suddenly appeared in Williams's path and (2) whether the accident scene was reasonably discernible.

{¶118} Although the collision between the vehicles operated by Williams and Schleinkofer is not at issue in this particular case (and Schleinkofer is not a party to this appeal), it is necessary to review whether there remain any genuine issues of material fact that Williams violated the ACDA rule with respect to that collision because the facts of the case suggest that the collision between the vehicles operated by Williams and Schleinkofer was part of the same collision involving the vehicle operated by Williams and the Secord Tanker operated by Janssens. (*See* Gray Depo. at 48). I also think that it is important to highlight the collision between the vehicles operated by Williams and Schleinkofer in light of the principle that

cases involving the ACDA rule "'require evaluation of the conduct of the driver in light of the facts surrounding the collision'" and that this evaluation is best done by a jury because its judgment "'is more likely to achieve a fair result than is a judge-made rule of law.'" *Ziegler v. Wendel Poultry Serv., Inc.*, 67 Ohio St.3d 10, 12-13 (1993), *overruled on other grounds*, *Fidelholtz v. Peller*, 81 Ohio St.3d 197 (1998), quoting *Blair v. Goff-Kirby Co.*, 49 Ohio St.2d 5, 9 (1976).

{¶119} I am not advocating that Williams did not violate the ACDA rule. Rather, my dissention from the lead opinion results from the application of the appropriate mechanism of review for a trial court's decision grating summary judgment in favor of a moving party. That is, after listing all of the evidence relative to material facts and assessing whether differences between the evidence present genuine issues, it is my opinion that there are genuine issues amid those material facts that are most appropriately resolved by a rational trier of fact—that is, not this court of appeal. Indeed, we are not to judge the quality of the evidence or determine whether Williams violated the ACDA rule. Instead, this matter comes to us to review whether the trial court's decision grating summary judgment in favor of Janssens, Secord Farms, and Progressive was appropriate. Accordingly, the only measure of review this court may conduct is to assess the evidence in a light most favorable to Williams as the nonmoving party and determine whether there remain any genuine issues of material fact regarding whether he violated the ACDA rule. To accomplish this, we are tasked with reviewing not just the evidence presented by

Williams but all of the evidence to determine whether it illustrates any genuine issues of material fact.

{¶120} R.C. 4511.21(A) restricts the speed at which drivers may operate a motor vehicle in *two* manners. First, the statute restricts persons from operating a motor vehicle "at a speed greater or less than is reasonable or proper, having due regard to the traffic, surface, and width of the street or highway and any other conditions." R.C. 4511.21(A) (2009) (current version at R.C. 4511.21(A) (2019)). This portion of the statute applies only to speeding violations—the "reasonable-speed rule." *See State v. Freed*, 10th Dist. Franklin No. 06AP-700, 2006-Ohio-6746, ¶ 24. Second, the statute restricts persons from operating a motor vehicle "at a greater speed than will permit the person to bring it to a stop within the assured clear distance ahead." R.C. 4511.21(A) (2009) (current version at R.C. 4511.21(A) (2019)). This portion of the statue—commonly referred to as the ACDA rule— applies to situations in which a motorist collides within an object with his or her path or lane of travel. *See Erdman v. Mestrovich*, 155 Ohio St. 85, 92 (1951).

{¶121} Contrary to the lead opinion's extensive discussion of the reasonableness of Williams's speed under the conditions, the reasonable-speed rule of R.C. 4511.21(A) is *not* at issue in this case. Indeed, the trial court granted summary judgment in favor of Janssens, Secord Farms, and Progressive after concluding that there were no genuine issues of material fact that Williams violated the ACDA rule. Accordingly, to determine whether summary judgment in favor of

Janssens, Secord Farms, and Progressive is appropriate in this case, it is necessary for this court to determine whether there are any genuine issues of material fact that Williams violated the ACDA rule—not whether he was operating his vehicle at a reasonable speed under the conditions.

{¶122} Under Ohio jurisprudence, a violation of the ACDA rule constitutes "negligence per se." *See Pond v. Leslein*, 72 Ohio St.3d 50, 53 (1995). "If a party relies upon the assured clear distance rule to establish negligence, that party must present some evidence of each element necessary to constitute a violation in order to make a prima facie case of violation." *Venegoni v. Johnson*, 10th Dist. Franklin No. 01AP-1284, 2002 WL 655279, * 4 (Apr. 23, 2002), citing *McFadden v. Elmer C. Breuer Transport Co.*, 156 Ohio St. 430, 434 (1952). "If the party fails to present evidence to establish any one of the elements necessary to constitute a violation, the benefit of the statute does not accrue to that party." *Id.*, citing *McFadden* at 434. Thus, if a de novo review reveals no remaining genuine issues of material fact that Williams violated the ACDA rule, neither Janssens nor Secord Farms are responsible for Williams's injuries, and Williams is not entitled to uninsured-motorist coverage from Progressive.

{¶123} Relative to the ACDA rule, assuming that a motorist is able to see all hazards within his or her path or lane of travel, that motorist is obligated to operate his or her motor vehicle at a speed at which he or she is assured to stop to avoid collision. *See Sabo v. Helsel*, 4 Ohio St.3d 70, 71 (1983). Originally, certain

circumstances—such as the sudden-emergency and reasonable-discernibility doctrines—were treated as defenses to violations of the ACDA rule. *See Venegoni* at *2; *Woods v. Brown's Bakery*, 171 Ohio St. 383, 387 (1960). However, the Supreme Court of Ohio incorporated those doctrines "into the test for a violation of the statute." *See Venegoni* at *2, citing *Pond* at 52. Thus, a motorist violates the ACDA rule if there is evidence presented that the motorist collided with an object that (1) was ahead of the motorist in his or her path or lane of travel; (2) was stationary or moving in the same direction as the motorist; (3) did not suddenly appear in the motorist's path; and (4) was reasonably discernible. *Pond* at 52. Importantly, speed is not an element of an ACDA-rule violation. *See* R.C. 4511.21(E) (2009) (current version at R.C. 4511.21(E) (2019)) (noting that a motorist's precise speed is irrelevant for purposes of the ACDA rule). In other words, when a motorist collides with a discernible object—whether stationary or moving in the same direction as the motorist (which did not suddenly appear)—that was ahead of the motorist in his or her path or lane of travel, it is presumed that the motorist was travelling too fast. Otherwise, that motorist would have been able to avoid the collision. Here, we are constrained to review the evidence in a light most favorable to Williams as the nonmoving party to determine whether there remain any genuine issues as to any material facts relative to *only* the four elements of a violation of the ACDA rule.

**{¶124}** Because Williams collided with the black Nissan Altima operated by Schleinkofer, then (at the accident scene) the Secord Tanker operated by Janssens, it can be presumed (without a lengthy analysis) that Williams was travelling too fast. Nevertheless, based on my review of the record, I see two scenarios presenting genuine issues of material fact as to whether Williams violated the ACDA rule: (1) whether the black Nissan Altima operated by Schleinkofer suddenly appeared in Williams's path or whether that vehicle was reasonably discernible and (2) whether the accident scene was reasonably discernible.

**{¶125}** First, there is a genuine issue of material fact whether Williams violated the ACDA rule in his collision with the black Nissan Altima operated by Schleinkofer—an issue which was not addressed by the trial court. Specifically, genuine issues of material fact remain as to whether that vehicle suddenly appeared in Williams's path or whether it was reasonably discernible. "An object suddenly appears in the driver's path if the 'assured clear distance was suddenly cut down or lessened by the entrance into the driver's line of travel of some obstruction which rendered him unable, in the exercise of ordinary care, to avoid colliding with such obstruction.'" *Venegoni* at *2, quoting *Cox v. Polster*, 174 Ohio St. 224, 226 (1963). *See Woods* at 386-387.

> The Ohio Supreme Court has declared that a following vehicle does not violate the assured-clear-distance statute when the lead vehicle suddenly appears in the path of the following vehicle, and when the following vehicle is not at fault for the lead vehicle's sudden appearance: "When a lead vehicle departs from a following

motorist's line or path of travel, only to reenter the line or path of travel suddenly and without the fault of the following motorist at a forward distance insufficient to allow the following motorist to avoid collision in the exercise of ordinary care, the following motorist is not negligent per se for failing to maintain an assured clear distance. This is true regardless of whether the lead vehicle completely leaves the lane of traffic in which both the lead and following motorists are traveling."

*Haney v. Law*, 1st Dist. Hamilton No. C-070313, 2008-Ohio-1843, ¶ 16, quoting *Pangle v. Joyce*, 76 Ohio St.3d 383, 392-393 (1996), and citing *Matz v. J.L. Curtis Cartage Co.*, 132 Ohio St. 271 (1937) and *Smiley v. Arrow Spring Bed Co.*, 138 Ohio St. 81 (1941).  However, "[a] collision with a vehicle stopped in the roadway does not constitute a sudden emergency." *Venegoni* at *2, citing *Coronet Ins. Co. v. Richards*, 76 Ohio App.3d 578, 584 (1991).  Rather, that circumstance requires an assessment of the reasonable discernibility of the stopped vehicle.  *See id.* at *3.

{¶126} Here, it is my opinion that evidence *was* presented from which reasonable minds could reach different conclusions as to whether the black Nissan Altima operated by Schleinkofer suddenly appeared in Williams's lane of travel within Williams's assured clear distance ahead and rendered him unable, in the exercise of ordinary care, to avoid the collision with that vehicle.  *See Ziegler*, 67 Ohio St.3d at 13.  Specifically, Williams provided unequivocal testimony that he did not see the black Nissan Altima operated by Schleinkofer.  (Williams Depo. at 41, 48).  He further testified that he did not "see any vehicles in front of [him], either in [his] lane or the right-hand lane." (*Id.* at 71).  However, Williams testified that

he attempted to avoid colliding with the Secord Tanker operated by Janssens at the accident scene by swerving to the left median but that he was unable to travel into the left median because there was "something in the median" yet he could not recall what was in the median restricting his travel. (*Id.* at 126). (*See also id.* at 47). He further clarified that he "was looking for a way out, the median was the first choice, [but he] couldn't go that way because there's vehicles or something [he saw] over there * * * ." (*Id.* at 40).

{¶127} There is also a genuine issue of material fact as to whether the object that Williams saw in the left median was the black Nissan Altima operated by Schleinkofer or the vehicle operated by a witness to the accidents—Black. That is, Black testified that she stopped her vehicle in the left median preceding the accident scene prior to the collision between the vehicle operated by Williams and the Secord Tanker operated by Janssens. (*See* Black Depo. at 40, 58). Further complicating the issue is Sergeant Gray's testimony that Schleinkofer stated to him that he "took action to avoid the crash by braking and moving left toward the median, and then [he] was struck behind by a truck," which was later determined to be the truck operated by Williams. (Gray Depo. at 44). From this testimony, we are unable to say that there are *no* genuine issues of material fact that the black Nissan Altima operated by Schleinkofer suddenly appeared in Williams's lane of travel within Williams's assured clear distance ahead and rendered him unable, in the exercise of ordinary care, to avoid the collision with that vehicle.

{¶128} Moreover, this evidence creates a genuine issue of material fact as to whether the black Nissan Altima operated by Schleinkofer was reasonably discernible. "'"The word 'discernible' ordinarily implies something more than 'visible.' 'Visible' means perceivable by the eye whereas 'discernible' means *mentally* perceptible or distinguishable,—capable of being 'discerned' by the *understanding* and not merely by the senses."'" (Emphasis sic.) *Cleveland Elec. Illum. Co. v. Major Waste Disposal*, 11th Dist. Lake No. 2015-L-104, 2016-Ohio-7442, ¶ 25, quoting *McFadden v. Elmer C. Breuer Transp. Co.*, 156 Ohio St. 430, 441-442 (1952), quoting *Colonial Trust Co., Admr. v. Elmer C. Breuer, Inc.*, 363 Pa. 101, 69 A.2d 126 (1949). "Accordingly, '"[d]iscernible" means cognitive awareness while "visible" means merely capable of being seen.'" *Id.*, quoting *Tritt v. Judd's Moving & Storage, Inc.*, 62 Ohio App.3d 206, 217 (10th Dist.1990). *See Cleveland Elec. Illum. Co.* at ¶ 34 (Wright, J., dissenting) (noting that courts must not only assess whether the object was visible, but also assess whether the object, if visible, was discernible within a sufficient time to allow the driver to stop when assessing the reasonable discernibility of an object), citing *Tomlinson v. City of Cincinnati*, 4 Ohio St.3d 66, 69 (1983), *Mincy v. Farthing*, 1st Dist. Hamilton No. C-081032, 2009-Ohio-5245, ¶ 12-18, and *Cincinnati Ins. Co. v. Watson*, 10th Dist. Franklin No. 88AP-898, 1989 WL 18172, *1-3 (Mar. 2, 1989). "An automobile, van, or truck stopped on a highway in a driver's path during daylight hours is, in the absence of extraordinary weather conditions, a reasonably discernible object as a

matter of law." *Smiddy v. Wedding Party, Inc.*, 30 Ohio St.3d 35 (1987), paragraph two of the syllabus.

{¶129} "'[W]hether an object is discernible under a given set of circumstances is a question of fact, and, when reasonable minds could reach different conclusions from the evidence presented upon the question,'" judgment in favor of the non-moving party should not be granted. *Sabo*, 4 Ohio St.3d at 72, quoting *Blair*, 49 Ohio St.2d at 10. *See also Mincy* at ¶ 18. Specifically, "[i]n cases in which a collision occurred at night or during extraordinary weather conditions that reduced visibility, the Ohio Supreme Court has held a jury question existed as to whether the object that the driver hit was reasonably discernible." *Hale v. State Farm Mut. Auto. Ins. Co.*, 5th Dist. Stark No. 2017CA00223, 2018-Ohio-3035, ¶ 15, citing *Blair* at 5, *Sabo* at 70, 73, *Tomlinson* at 67, *Junge v. Bros.*, 16 Ohio St.3d 1, 4 (1985), *Sharp v. Norfolk & W. Ry. Co.*, 36 Ohio St.3d 172 (1988), syllabus, and *Ziegler*, 67 Ohio St.3d at 13-14. *See also Venegoni*, 2002 WL 655279, at *4 ("Thus, particularly where conflicting evidence is introduced regarding whether an object is reasonably discernible on a highway during nighttime hours, a judgment of a jury is required."), citing *Sharp* at 175.

{¶130} Construing the evidence in Williams's favor, it is clear that a genuine issue of material fact as to whether Williams reasonably discerned the black Nissan Altima operated by Schleinkofer exists—that is, whether he was cognitively aware of that vehicle within a sufficient time to allow him to stop. Likewise, my review

of the record reveals there are genuine issues of material fact as to whether the accident scene was reasonably discernible.

{¶131} In this case, Williams testified that the fog "started getting * * * thicker" as he drove east but that it was patchy and that "up until the accident, you could still see pretty good to drive * * * ." (Williams Depo. at 35-36, 68-69, 112). He testified that west of the wall of fog "wasn't that bad, it was patchy. It wasn't all that bad up until the time of the accident * * * ." (*Id.* at 85, 113). Williams stated that he "got to the thickest part of the fog * * * right before the accident" and that the accident scene was "on the other side of" the wall of fog. (*Id.* at 38-39). Williams described the wall of fog as a total white out "[f]or about a split second" and that he noticed that the wall of fog appeared different from the patchy fog, which was present "[b]efore [he saw] the guy waving his hands." (*Id.* at 85, 92). (*See also id.* at 91).

{¶132} Williams described the chain of events as he perceived them: "[s]omebody comes out and waves their hands * * * to stop or slow down, [he] applied the brake, [he] looked up, there was like no visibility for like a split second, and the fog disappears, and all [he] see[s] is a big chaos in front of [him]." (*Id.* at 40). (*See also id.* at 46-47, 72, 85, 92, 113, 121). Importantly, Williams testified that he could not tell that the wall of fog behind the person was very dense and could not see any vehicles or any objects beyond the wall of fog. (*Id.* at 73-74). Moreover,

Williams testified that he did not hear any of the prior collisions, hear any horns, or see any lights. (*Id.* at 53).

{¶133} A witness to a number of the accidents that morning (as well as the weather conditions that precipitated those accidents)—Cusick—testified that he witnessed the Secord Tanker operated by Janssens pass him but that "[i]t had gotten far enough that [he] had lost the headlights [sic]." (Cusick Depo. at 13). Then, according to Cusick, "it wasn't much longer [until he] again saw the taillights" of the truck as it was colliding with the vehicle operated by Messman. (*Id.* at 13-14). Cusick (who was operating a GMC Yukon) hypothesized that (had he been travelling in the same lane as the truck) he would have been able to avoid colliding with it because he "saw the lights in enough time * * * ." (*Id.* at 21). Cusick testified that he could see the Secord Tanker's red taillights from a distance of 100 to 150 feet. (*Id.* at 41-42).

{¶134} Cusick described the fog as including varying levels—"it was always either extremely dense or it would get a little better, but it would never completely let up"—but that "the changes in the density of the fog still allowed [him] to continue to travel on that road." (*Id.* at 17-18). However, he described the fog in the area of the accident scene was denser than the previous fog patches that he encountered. (*Id.* at 17-19). Indeed, he testified that the density of the fog at the accident scene "was not ascertainable until [he] got into the dense patch." (*Id.* at

19). However, he testified that he would not characterize that dense patch of fog as a wall; rather, he would characterize it as "a large fog mass." (*Id.* at 19-20).

{¶135} A second witness to those accidents—Black—testified that she "had come upon the accident that had already happened" between the Secord Tanker operated by Janssens and the Marten Transport vehicle operated by Pursley which caused her to "pull[ her] vehicle off to the left * * * ." (Black Depo. at 11). (*See also id.* at 40-43, 58). She testified that she was able to see the "silhouette" of the accident scene within enough time for her to pull her vehicle into the median. (*Id.* at 67).

{¶136} According to Black, the fog became thicker the further east she drove and that "[i]t came in very quick * * * ." (*Id.* at 37). Black described the fog as worsening from the time she parked her vehicle until the collisions ended—namely, between the time she exited her vehicle and the collision between the vehicle operated by Williams and the Secord Tanker operated by Janssens. (*Id.* at 17, 23). Further, Black described the fog "as a large, foggy area" as opposed to a wall of fog. (*Id.* at 52). (*See also id.* at 66).

{¶137} Moreover, Sergeant Gray testified that Schleinkofer reported to him "that he saw the truck and people waiving, and took action to avoid the crash by braking and moving left toward the median * * * ." (Gray Depo. at 44).

{¶138} Although not dispositive to this appeal, Janssens's and Pursley's testimony also illustrate the remaining jury issue: whether the black Nissan Altima

operated by Schleinkofer and the wall of fog and, consequently, the accident scene were reasonably discernible. Janssens testified that the "[f]og was dense" and that it "would lift and then it would come in thick * * * ." (Janssens Depo. at 67). (*See also id.* at 127). He testified that, just prior to his collision with Messman, he encountered a patch of dense fog—which he characterized as a wall of fog—that lasted about a "[h]alf mile, quarter of a mile." (*Id.* at 69-70, 75, 128). According to Janssens, he was "not surprised" to encounter the dense fog because he "had been driving in that dense fog for a while" but that the density of the fog caught him "off guard." (*Id.* at 77, 129). Janssens testified he could not see any of the other collisions that occurred behind him because the fog was too dense. (*Id.* at 128-129). Janssens described his collision with Messman's vehicle as a "hidden hazard" in that patch of dense fog. (*Id.* at 84-85).

{¶139} Pursley testified that "[t]he weather was patchy, misty, patchy fog to clear. It was just a hit and miss of the patchy fog." (Pursley Depo. at 52). (*See also id.* at 53-54, 84, 89-90, 127). He described it as "getting foggier" the further he east that he drove. (*Id.* at 55). According to Pursley, he saw "what looked to be red lights" on the right shoulder," which caused him to take "evasive action because the fog had become very dense, very tick, almost like a wall, and [he] wanted to give whoever [sic] was on that shoulder safe space. And the visibility was so low that [he] took evasive actions to move to the fast lane or hammer lane." (*Id.* at 55-57). He further testified:

At the time that I first saw the red lights, I saw the red lights and then everything just went blank. It was like a wall, it was very dense fog. As soon as I saw those lights, my evasive action to those lights was to move to the hammer lane, but as soon as I saw those lights, at the same time, there was like a flicker of light. Your senses are already heightened and aware of more of your surroundings, and I saw the light and the light disappeared into a white fog.

(*Id.* at 57). (*See also id.* at 84-86, 119-122, 128). Then, he "had a flash of red light dead ahead of [him], no idea what it was, just red light. * * * He attempted to go to the median," but "[s]ome part of [his] vehicle * * * hit an object." (*Id.* at 59). He clarified that he did not see the red tail lights of the Secord Tanker operated by Janssens, only the red lights on the right shoulder. (*Id.* at 121). He described that there was "no visibility" or "a white out" for "a fraction of a second." (*Id.* at 84-85). Because there was no visibility, Pursley did not know what he hit. (*Id.* at 59, 87-88, 90, 129).

{¶140} In my opinion, the foregoing evidence presents conflicting evidence as to the discernibility of the black Nissan Altima operated by Schleinkofer and the accident scene. There is no dispute that extraordinary weather conditions were present—namely, the accident occurred during a period of foggy conditions—and that the accident did not occur during the day light; rather it occurred at dawn (or the beginning of twilight).[14] Yet, the lead opinion tacitly concludes that "this

---

[14] The lead opinion suggests that the "*Smiddy* rule," which states that an object "stopped on a highway in a driver's path during daylight hours is, in the absence of extraordinary weather conditions, a reasonably discernible object as a matter of law" could apply to the periods of the day known as dawn or dusk. (Lead Opinion at ¶ 15, fn. 2); *Smiddy v. Wedding Party, Inc.*, 30 Ohio St.3d 35 (1987), paragraph two of the syllabus. I disagree that this rule applies to the periods of the day known as dawn or dusk—twilight; rather, it is my opinion that the application of this rule to this period of the day is a question of fact to be considered on a

argument does not present a question for a jury to consider." (Lead Opinion at ¶ 78).

**{¶141}** In support of its conclusion that no jury question exists, the lead opinion suggests that "[n]either bends nor twists in the highway, crests in the road, dim lights, fog, sleet, rain, or blinding lights of approaching motor vehicles will excuse him from the duty to drive so that he can stop his vehicle within that assured clear distance ahead" and that "the driver of an automobile has a duty to 'stop his machine whenever he is so blinded as to be unable to see the way in front of him.'" (Citations omitted.) *Roszman v. Sammet*, 20 Ohio App.2d 255, 258 (3d Dist.1969), *rev'd on other grounds*, 26 Ohio St.2d 94 (1971); *Pleimann v. Coots*, 2d Dist. Greene No. 2002-CA-54, 2003-Ohio-316, ¶ 17. I generally agree that none of those conditions obviate the requirement that a driver operate his or her vehicle in a manner in which he can stop his or her vehicle within an assured clear distance ahead or that a driver has a duty to stop (or slow) his vehicle if he is unable to see the way in front of him. However, the failure to comply with those measures does not constitute a violation of the ACDA rule; rather, that failure would be evidence of a violation of the "reasonable-speed rule" under R.C. 4511.21(A) because (as I previously stated) operating a vehicle—notwithstanding the conditions—at a greater speed than would permit a motorist to bring the vehicle to a stop within the

---

case-by-case basis. *See Sauer v. Crews*, 10th Dist. Franklin No. 10AP-834, 2011-Ohio-3310, ¶ 20. *See also Roszman v. Sammet*, 20 Ohio App.2d 255, 256 (3d Dist.1969), *rev'd on other grounds*, 26 Ohio St2d 94 (1971).

assured clear distance ahead is not dispositive of a violation of the ACDA rule. Rather, violations of the ACDA rule must be evaluated against the four elements of the rule.

{¶142} Moreover, in support of its contention that summary judgment in favor of Janssens, Secord Farms, and Progressive is appropriate, the lead opinion relies on a case from our sister appellate district rejecting the "contention that the white-out condition which obscured his visibility of the truck was an intervening cause that cut-off appellant's obligation to drive at a reasonably safe speed for the then existing road and weather conditions in their totality." *State v. Klein*, 11th Dist. Portage No. 95-P-0053, 1998 WL 156868, *5 (Mar. 27, 1998). However, the Eleventh District Court of Appeals' analysis ignores the elements of the ACDA rule that I discussed above—namely, whether an object with which a driver collides was reasonably discernible. The same is true of the Sixth District Court of Appeals' analysis in *Kaip v. Estate of Smith*. 6th Dist. Erie No. E-05-037, 2006-Ohio-323.

{¶143} Indeed, as I pointed out above, the Supreme Court of Ohio incorporated the reasonable-discernibility doctrine "into the test for a violation of the" ACDA rule. *See Venegoni*, 2002 WL 655279, at *2, citing *Pond*, 72 Ohio St.3d at 52. Thus, our sister appellate districts' analyses are more appropriately applied to a violation of the reasonable-speed rule under R.C. 4511.21(A).

{¶144} Here, I would conclude that reasonable minds could reach different conclusions as to the discernibility of the black Nissan Altima operated by

Schleinkofer and the accident scene based on the presence of the fog as well as the twilight period of the day. *Compare Hale*, 2018-Ohio-3035, at ¶ 21 (concluding that "reasonable minds could reach different conclusions as to whether the stopped Pilot was reasonably" discernible because a "mixture of rain and snow was falling, and it was dark outside"); *Blair*, 49 Ohio St.2d at 5 (concluding that a question of reasonable discernibility existed for a jury to determine because it was "dark, misty, rainy night"); *Sabo*, 4 Ohio St.3d at 70, 73 (concluding that the ACDA-rule violation was a question of fact for the jury based on the presence of fog); *Junge*, 16 Ohio St.3d at 4 (holding "that reasonable minds could reach different conclusions as to whether the overturned tractor-trailer was reasonably discernible" because, in part, "[t]he stretch of highway where this accident occurred was unlit and the night was dark"); *Sharp*, 36 Ohio St.3d at syllabus (holding that "the issue of whether an object is reasonably discernible on a highway during nighttime hours is usually a question of fact for a jury to determine"); *Ziegler*, 67 Ohio St.3d at 13-14 (concluding that evidence was presented from which jury could reasonably have concluded that bus was not reasonably discernible in heavy fog). Furthermore, beyond the presence of the fog, I think that the testimony depicting the varying degrees of the fog also presents a question for the jury to consider in determining the reasonable discernibility of the black Nissan Altima operated by Schleinkofer and the accident scene. *See Ziegler* at 13-14.

-80-

{¶145} Nevertheless, the lead opinion addresses the reasonable-discernibility element of the ACDA rule and concludes that the accident scene must have been reasonably discernible to Williams because he "was able to see the Secord Tanker in his direct line of travel before he struck it." (Lead Opinion at ¶ 28). That conclusion is not an appropriate application of the reasonable-discernibility element. *See Cleveland Elec. Illum. Co.*, 2016-Ohio-7442, at ¶ 36 (Wright, J., dissenting) ("That Tyson saw the power line before his truck hit it is not dispositive as to whether a reasonably prudent person should have appreciated the danger."). That is, the ACDA rule "does not apply 'unless the object struck was discernible for "a time sufficient to allow the driver to avoid it with the exercise of reasonable care."'" *Venegoni* at *5, quoting *Coronet Ins. Co. v. Richards*, 76 Ohio App.3d 578, 584 (10th Dist.1991), quoting *Midwestern Indemnity Co. v. Chubbs*, 10th Dist. Franklin No. 83AP-347, 1983 WL 3849, *1 (Dec. 27, 1983). Thus, "[t]he fact that [a driver] saw [another] vehicle seconds before the collision is not determinative of whether [that] vehicle was 'reasonably discernible.'" *Id.*, citing *Blair* at 11. *See Cleveland Elec. Illum. Co.* at ¶ 34 (Wright, J., dissenting).

{¶146} Notwithstanding that conclusion, the lead opinion recognizes the conflicting evidence as to the amount of time that the accident scene was discernible. Specifically, the lead opinion highlights that Black and Cusick were able to see the accident scene through the fog. (Lead Opinion at ¶ 66-67). Importantly, Black testified that she discerned the accident scene within a time sufficient to allow her

to avoid collision and Cusick testified that he saw the accident scene within a time sufficient that he hypothesized that he would have been able to stop. Further, Schleinkofer testified that he discerned the accident scene within a time sufficient to allow him to avoid collision. Black's, Cusick's, and Schleinkofer's testimony conflicts with Williams's and Pursley's testimony that they did not see the accident scene within a time sufficient to permit them to stop. Because there is conflicting evidence as to the discernibility of the black Nissan Altima operated by Schleinkofer and the accident scene, Ohio case law demands that element of the ACDA rule to be determined by a jury. *See Pond*, 72 Ohio St.3d at 52. *See also Venegoni* at *5.

{¶147} Finally, another issue affecting the discernibility of the accident scene is the collision between the vehicles operated by Williams and Schleinkofer. This collision—occurring moments before the collision between the vehicle operated by Williams and (at the accident scene) the Secord Tanker operated by Janssens—constitutes a circumstance which should be considered by a jury in determining the reasonable discernibility of the accident scene. *See Sabo*, 4 Ohio St.3d at 72; *Ziegler*, 67 Ohio St.3d at 12-13.

{¶148} Therefore, because summary judgment must be awarded with caution, and because the lead opinion has tip-toed perilously close into a factfinder's role in its analysis of witness credibility, genuine issues of material fact exist in this case. Accordingly, construing the evidence in a light most favorable to Williams, I would conclude that reasonable minds could reach different conclusions as to

whether the black Nissan Altima operated by Schleinkofer suddenly appeared in Williams's lane of travel and as to the reasonable discernibility of the black Nissan Altima operated by Schleinkofer and the accident scene. Because reasonable minds could reach different conclusions as to whether Williams violated the ACDA rule, a jury issue remains and summary judgment in favor of Janssens, Secord Farms, and Progressive is not warranted. Based on this conclusion, Williams's second and third assignments of error would be moot and I would not address them.

**/hls**